Mr. Justice Clayton
delivered the opinion oí the court.
This case is involved in much complexity, from the number and variety of transactions to which it refers.
We shall first consider the original bill. That was filed to compel the trustees in the deed of trust, to make title to the complainant to certain lots, which the trustees had sold him under the deed of trust, but which they afterwards refused to convey *763 at the instance of Thomas F. Walker, the grantor in the deed of trust.
This refusal, upon the part of the trustees, is now sought to be justified upon the ground, that, at the time of the sale, the state of facts did not exist, which, by the terms of the deed of trust, authorized a sale. A deed of trust is but a power, coupled perhaps with an interest. To legalize the execution of the power, those circumstances must exist upon which the right to exercise it is made to depend. In this case the trust deed provided, that the trustees might sell upon the joint request of Brungard and Thomas F. Walker, “ or in case Brungard should suffer any loss or damage, by reason of any execution or executions against him being levied in consequence of the non-payment of any of said notes, upon which he was indorser, then the said trustees should sell, when requested by Brungard.” It is now insisted that there was no joint request of Brungard and Walker to the trustees to sell, and no occurrence of the contingency on which Brungard alone might make the' request.
The bill was taken for confessed against the trustees. The sale was made without objection from Thomas F. Walker, and it may be presumed with his consent, because he says in his answer, that “he forbid the trustees to make a deed after the sale, because he had discovered that complainant was fraudulently pretending that he was purchasing the property for the purposes of the trust, and after purchasing it, was converting it to his own use, without making provisions for the trust debts.” From this answer it may safely be inferred, that the sale was made in pursuance of the provisions contained in the deed of trust. This is made still more manifest by the letter of Thomas F. Walker, written 5th of April, 1839, in which he refers to the sale in question made by the trustees, and shows at that time every disposition to acquiesce in it. There is no evidence to show that the sale was not fairly conducted.
If there were a combination of the character referred to in the answer between complainant and Thomas F. Walker, that complainant should purchase at a reduced price, and afterwards give to Walker a share in the proceeds of any advance or increased *764 value, the creditors would have cause to complain, and might set aside the sale. But a party to such compact could not have the matter investigated in equity. We therefore come to the conclusion, that the decree of the court below, in reference to the subject of the original bill, removing the trustees, and directing a conveyance of the property embraced in the sale of 18th of Feb. 1839, was correct.
The next point of controversy grows out of the cross-bill, and relates to the sale of a brick house, made by the trustees in Jan. 1839, and conveyed by them to Brungard. It is sought to- set aside this sale and conveyance, or if this be not done, then to make Brungard accountable for the proceeds of a subsequent sale, and the rents of the property. It is alleged in the cross-bill, that the sale of this house and lot was with an understanding, that it should be afterwards mortgaged to the. Union Bank to raise money, and that the amount so raised should be applied to the benefit of the trust fund. This allegation is positively denied by the answer, and the sale is asserted to have been unconditional.- There is proof, especially the depositions of the trustees, that there was an understanding between the parties, on the subject of this sale. The letter of Thomas F. Walker, before referred.to, points to the same conclusion. But the deed to the property is .absolute and unconditional; the testimony mostly relied on to assail it, is that of the trustees. To say the least, they stand in a suspicious attitude. As the agents of all the parties interested under the trust deed, it was their duty particularly to the creditors, to make none but an open, fair, and boná fide sale; and it speaks but little for their credibility, when they afterwards give testimony, that they had lent themselves to a secret understanding between Walker and Brungard, which was a departure from good faith, and of necessity created risk and hazard to the creditors in the deed of trust. But at most this amounts only to a parol agreement in regard to land. The trust which it attempts to establish or create, is not a resulting trust. That species of trust is, where the conveyance is taken in the name of one person, while the consideration is given or paid by another. So if trust money be vested in land, the money *765 may be followed, and a claim of this sort may be supported by parol evidence. Hill on Trustees, 91, 95. But neither of these facts is made to appear in this case. Any latitude of construction is not indulged, in regard to resulting trusts of this nature. When, therefore, a man employs another as his agent to buy an estate, and the latter buys it in his own name, and no part of the purchase-money is paid by the principal, there if the agent deny the trust, and there is no written evidence of its existence, it cannot be enforced against him, for that would be in the teeth of the statute of frauds. Ib. 96. This case is covered by the latter principle. Brungard denies that he made the purchase in trust, or that trust funds were paid for it, and there is no written evidence. His deed from the trustees cannot be set aside, or declared subject to a trust, upon the testimony in this case.
This decision disposes also of the other question. If Brungard obtained the absolute title, unaffected by any trust, he is not liable for the proceeds of the resale, or for the rents of the estate. Neither can his vendees be disturbed.
The next point is as to the three hundred and twenty acres of land. This tract was conveyed by the deed of trust, but it was afterwards levied upon by the sheriff of Warren, under an execution issued upon a judgment against Thomas F. Walker, older than the deed of trust, and purchased by Brungard at' the sheriff’s sale. A deed was executed to him by the sheriff. The money which he paid to the sheriff was borrowed by him from the Commercial and Railroad Bank of Vicksburg. Nothing is urged against the validity of this sale, but it is said that it must inure to the benefit of Walker, or of the trust fund. A letter of Brungard is made an exhibit, in which he says, in reference to this sale and purchase, that “his sole object in purchasing was for the purpose of more speedily relieving his indorsements on your (Walker’s) paper, and give you all the benefits’of its after-sale.” This letter plainly depiares his intention, but it was a promise made after the purchase, without any previous agreement, so far as appears from the record, and without any consideration to support it. On this showing, it could not have been enforced, if the land were still in the hands of Brungard. But *766 in truth the land was afterwards sold under an execution against him, and was purchased at that sale for his wife. It is in proof that her own separate funds, derived from the estate of a deceased relative in Louisiana, were paid for the purchase, as well as for her purchase of one of the lots. No part of the trust funds, growing out of Walker’s deed of trust, was applied towards her payment. There is no ground then to set aside these sales, and either restore the property to Walker, or to declare it subject to any trust in his favor. It was not urged, in'argument, that his relation to the trust property converted the purchaser into a trustee. The cestui que trust may certainly purchase the trust estate, as freely as any third person. But if we were to hold, that the purchase of the plantation converted Brungard into a trustee, and that the sub-purchaser was likewise a trustee, the sale could not be set aside, without a decree for the repayment of the purchase-money. There is no offer in the bill to make such payment, and no evidence to show that the land is now worth more than it brought when sold.
This disposes of the principles on which the decree is founded. We pass to the report of the commissioner, and its confirmation by the court below. Walker filed five special exceptions to the report, which were all overruled.
The two first may be regarded as already decided, because when it is established that Brungard’s title to the property was absolute, and unconnected with any trust, there is no reason to hold him or the sub-purchasers liable for rents or profits.
The remaining exceptions are, 1. That the account does not charge Brungard with the amount of the notes of Tate & Poindexter, indorsed by Anderson. 2. It does not charge him with the $9000 paid by Walker to Brungard in a stock of goods, as a premium for his indorsement of Walker’s notes. 3. It does not charge him with the invoice price of a small stock of goods, which seems to have been placed in his hands. Of each of these in their order.
Among the notes placed in the hands of Brungard for collection and appropriation to the payment of the trust debts, by the trustees with the consent of Walker, were several notes of Tate *767 & Poindexter, with several indorsers for upwards of $20,000. By some arrangement, Brungard afterwards procured Samuel Anderson, of Louisiana, as an indorser. The other parties to the notes lived in this state, and all proved to be utterly and hopelessly insolvent. Brungard sued out an attachment in Louisiana against Anderson. This attachment was dismissed by the court, and the order of dismissal affirmed on appeal, because a proper foundation for it could not be laid. Anderson brought suit against Brungard’s surety in the attachment bond, and this suit was compromised by Brungard’s surrender of the notes indorsed by Anderson, and by the dismission of the suit upon the attachment bond, at the costs of Anderson. It is now sought to make Brungard liable for the amount of the notes so surrendered. It strikes the mind at first with some degree of surprise, that so large an amount should have been given up, to obtain the compromise. That surprise is dissipated, when, upon examination of the proof, it is found that every man upon the paper wa.s insolvent. Anderson was the only one of whom any hopes could be entertained. He became a certificated bankrupt, and the only property of his which could by possibility have been reached, was an interest in some lands and negroes which he had mortgaged, and on which the mortgage debt did not fall due for some two years. Before a judgment could have been obtained, and this property seized under execution, it is. probable that time would have elapsed. It was in the diligent prosecution of the agency he had undertaken, that Brungard’s liability to a suit on the attachment bond accrued. If he or his surety had been subjected to recovery, the trust estate was justly liable for the damages, if he acted with good faith, and with reasonable skill and diligence. By the compromise, he exempted it from this hazard, and he gave up a very uncertain and contingent advantage. Brungard procured the indorsement of Anderson, after the notes were put in his hands. He gave up, therefore, only what he himself procured. Without that indorsement, the notes were utterly worthless. There is no proof, on which an estimate approaching accuracy could be made, of the value of this debt, if indeed, under the circumstances, it were of any value. The *768 attachment, which was the only process that promised any benefit, turned out to be unavailing, because Anderson was not subject to it. Reasonable diligence and good faith are what is required of an agent. Story, Bailm. 296; Story, Agency, 272. ■No lack of either of these qualities is established. We do not, therefore, see how Brungard is to be made liable for this debt, as the proof is such as to show an extreme improbability that any thing could have been realized upon it, by any course which could have been taken.
As to the next exception. The amount therein referred to as having been received by Brungard, was paid to him as a premium for his own indorsement,- and his agency in procuring other indorsers for Walker, upon his large contract with Folkes. We know of no principle, on which he could be made to account for it to the trust fund or to Walker. Indeed the transaction took place some time before the deed of trust was executed.
In regard to the last exception, Brungard ought not to be charged with the invoice price of the goods, unless he received it, or lost a part of their value by want of diligence, or of good faith. He is charged with the price which he got, and there is no proof that they* were worth more. It was the remnant of an old stock, on which of necessity there must have been great loss.
We have now gone over all the points made in the argument, and have been struck with the accuracy of the conclusions, to which a laborious investigation conducted the mind of the chancellor. His written opinion exhibits a thorough acquaintance with the facts in all their relations. We think his decree was correct, and that it should be in all things, affirmed.
Decree affirmed.
A petition for a re-argument was filed, but not granted.