Rufus F. Provine et al. *v.* James Thornton et al.

[46 South., 950.]

1. Deed of Trust. *Trustee's sales. Constitution* 1890, *sec.* 111; *Code* 1892, § 2443. *Lands. Single tract. What is?*

Lands, if used or occupied as, or if they naturally constitute, one farm, are a single tract within the meaning of Constitution 1890, sec. 111, regulating sales under executions and decrees, and Code 1892, § 2443, extending the constitutional provision to sales under deeds of trust and mortgages with power of sale, and should be offered for sale as a whole, although a part may be separated from the balance.

2. Same. *Substituted trustee. Laws* 1896, *p.* 105, *ch.* 96.

Under Laws 1896, p. 105, ch. 96, requiring written evidence of the substitution of a trustee to be placed of record, the substitution must precede the sale and the record must furnish to the purchaser evidence of title such as would be good in ejectment.

3. Same. *Facts examined.*

Facts of the case examined and adjudged to fall short of constituting a sufficient record of a substitution of a trustee.

From the chancery court of Calhoun county.

Hon. Isaac T. Blount, Chancellor.

Thornton and others, appellees, were complainants in the court below; Provine and others, appellants, were defendants there. From a decree in complainants' favor defendants appealed to the supreme court. The facts are stated in the opinion of the court.

*Stone & Stone,* for appellants.

We call attention of the court to the exact terms of Code 1892, § 2443, which begins as follows: "All lands comprising a single tract." It seems to us that this means what it says, a "single tract," and cannot mean a number of parcels of land not contiguous. If two or more pieces of land sepa-

rated by one half mile as, in the case before us, can be said to "comprise a single tract" then why not allow them to be separated by several miles and even whole counties? It seems that the facts of this case settle this question but to show the court how it has been dealt with by other courts, we cite 28 Am. & Eng. Ency. of Law (2d ed.), 338, where we are told that several tracts may be embraced in one plantation. In 4 Ballard's Law on Real Property, par. 556, it is said "Where subsequent to the execution of the mortgage the premises are subdivided into town lots laid off with reference to established streets and alleys, each parcel wholly surrounded by such streets and alleys is a distinct tract and must be sold as such." If such a separation causes the original "single tract" to become different tracts, then certainly the parcels of land separated originally by several hundred yards could not be treated as "a single tract."

The next point for consideration is whether Moring was properly substituted as trustee instead of the original trustee. To begin at the beginning, Laws of Mississippi 1896, p. 105, provide "That sales of lands under deeds of trust by substituted trustee shall not convey the interests of the grantor or grantors therein until the substitution appears of record in the office of the chancery clerk of the county where the land is situated. Such substitution may appear by separate instrument recorded as other recordable instruments, or it may be attached to or a copy thereof may be endorsed by the chancery clerk on the deed book where such deed of trust is recorded."

From this we see that the substitution may appear "by a separate instrument recorded as other recordable instruments"; or it "may be attached to" the record; or "a copy thereof may be endorsed by the chancery clerk on the deed book where such deed of trust is recorded." In the case under discussion the defendant Newburger evidently adopted the latter plan. He sent the paper to the chancery clerk with directions to copy same on the margin of the record after inserting the number of the page and the book of record which he had left blank in the

paper signed by him.  This appointment described the deed of trust by date and by parties correctly but left the place of record out.  This seems to have caused no difficulty because the clerk found the proper deed of trust and copied it on the margin. That this was the correct deed of trust we have but to refer the court to the fact that it was the same book and page that the clerk who recorded Newburger's deed of trust certified that it was then recorded on.  It might add interest to the question if the clerk had found some other deed of trust and recorded Newburger's paper on its margin, but in this case our adversaries have no right to complain because the right deed of trust was found.  The original was handed to James Thornton and identified by him several times and the defendant Newburger cannot be bound by an error of the clerk in recording the deed of trust originally because no harm has been done to any of the parties.  It appeared from the heading or caption of this record that the deed of trust was from "James Thornton et al. to Edwin Newburger," and the mere omission of a few words describing J. F. Provine as party of the second part and telling that Edwin Newburger was the party of the third part could not mislead anybody.  If interested parties had made inquiry of Newburger as to whether he held a deed of trust from Thornton they could not have failed to gain full and complete information.  Again, these parties, the grantors in the original instrument, are bound by the instrument as it actually exists regardless of what may or may not appear of record.  The laws requiring the registry of conveyances are not for the benefit of parties but for the benefit and guidance of outsiders.  And another good and sufficient reason why Thornton cannot raise any objection is that he and the other complainants have not been injured.  No man has a right to complain of what has done him no injury.  It is plainly and unequivocally laid down in *Mangold* v. *Barlow*, 61 Miss., 593, that "from the time a deed is lodged with the proper officers for record, it becomes notice to subsequent purchasers

and creditors of what it contains, and not of what the recording officer may make it show on the record."

*Creekmore & Bates* and *J. J. Adams,* for appellees.

Before the substituted trustee was authorized to sell, it was necessary that he be lawfully appointed as substituted trustee and that his appointment be recorded in accordance with the provisions of the Laws 1896, p. 105. This law provides three methods by which the substitution may appear of record.

1. Such substitution may appear by a separate instrument recorded as other recordable instruments.

2. It may be attached to the deed book where such deed of trust is recorded.

3. The copy thereof may be endorsed by the chancery clerk on the deed book where such deed of trust is recorded.

It is evident from the record in this case that the first method was not pursued, for the instrument was not acknowledged nor recorded as other recordable instruments; nor was the second method pursued, because the instrument was not attached to the deed book where the deed of trust is recorded; therefore if the statute has been followed in this case the third method was adopted by Newburger, the beneficiary in the trust deed. In considering the question as to whether this last method was pursued and the statute complied with it is necessary that we consider the object and purpose of this statute. The statute was enacted not only to give security to titles but also to induce bidders to offer a fair price for the property sold. *Hyde* v. *Jefferson,* 31 South., 415.

This statute has nothing to do with the question of notice and the case of *Mangold* v. *Barlow,* 61 Miss., 593, cited in the brief for appellant is not in point; this statute provides that sales of land under deeds of trust by substituted trustees shall not convey the interest of the grantor or grantors therein until the substitution appears of record, thus fixing the recordation of the substitution as a condition precedent to the passing of

title. We are aware of the decision of our court holding that it is not necessary that the substitution actually be spread upon the records before the sale and we do not contend that the fact that the clerk copied the substitution of Moring as trustee upon the margin of a record, which was not a correct record of Newburger's trust deed, would of itslef render the acts of the substituted trustee ineffectual, provided that at the time of the lodging with the clerk of the substitution there had been a proper record of the trust deed on the margin of which the clerk should have copied the substitution. We admit that so far as the substitution itself is concerned it was just as effectual when lodged for record as it was after it had been copied by the clerk on the margin of the record of deeds. We insist, however, that the trust deed given by Thornton to Newburger had never been correctly recorded and there was no record showing a recordation of such a trust deed, and such being the case there was no authority for Newburger to avail of the second or third methods of having his substitution appear of record, but he was confined solely to the first method. It is true that Newburger had done his whole duty to subsequent creditors and purchasers when he lodged his trust deed from Thornton with the clerk for record, as such lodgment of the trust deed with the clerk was notice to them of what the trust deed actually contained and not of what the clerk wrote on the record. Nevertheless this was only a matter of notice, but when Newburger undertook to exercise the power vested in him by the terms of the trust deed and passed from a question of notice to one of title and undertook to appoint Moring as substituted trustee, it was necessary to comply with the statute of 1896 in all of its essential requirements. If the deed of trust had not been of record at all, Newburger could have complied with the statute by having his substitution acknowledged and recorded as a separate instrument; so if the recordation of the trust deed was so defective as to fail to show that Newburger had any interest therein while it would be notice from the fact that the original had been lodged with

the clerk it would not be such recordation as would justify the copying thereon by the chancery clerk of the substitution. A person who expected to buy at the trustee's sale on examining the record would find that the substitution did not appear by a separate instrument, duly recorded, nor that it was attached to or copied on the margin of a deed of trust in which Newburger was beneficiary. The intending purchaser would at once be doubtful and suspicious of the title, and the object of the statute as declared by this court in the case of *Hyde* v. *Hoffman,* 31 South., 415 would be rendered nugatory.

Appellants' counsel devote considerable space in their brief making an argument that the eighty acres of land described as S$\frac{1}{2}$ of SE$\frac{1}{4}$ of Sec. 35 was not a part of the same tract of land as the other lands conveyed in the deed of trust and therefore section 111 of the constitution does not control as to sale of this eighty acres of land. This court has never construed so far as we know this section of the constitution with reference to what did or did not constitute a tract in the meaning of this section but unless the words "single tract" exclude everything except land which is contiguous, it would seem that land that was bought as a whole, used and occupied for years as a whole and regarded as an entirety would be within the meaning and contemplation of the constitution; for it was the evident intention of the framers of the constitution to prevent the sacrifice of farms by offering it in such manner as would not be attractive to bidders.

Argued orally by *E. D. Stone* and *W. I. Stone,* for appellants, and by *H. H. Creekmore* and *J. C. Longstreet,* for appellees.

CALHOON, J., delivered the opinion of the court

This is a proceeding to annul a sale made by a substituted trustee. The land under consideration had been held for years, and was held at the time of the execution of the trust deed, by appellees as a home place, all as part of one plantation, although

eighty acres of it were about a half mile removed from the balance of the property, but connected with it by a public road. The trustee, in making the sale, first sold this detached tract of eighty acres, announcing when he sold it that the sale was to be final, and it would not be resold together with the balance as a whole under the law.  It is well shown that this act made the property bring less than it otherwise would have brought.  This failure on the part of the trustee is one of the grounds for the annulment of his sale. ⸱ Another ground is that the substitution of Moring as trustee for Provine, the original trustee, was not properly of record before the sale was made.  We regard these two propositions only necessary to be noticed.

Recognizing that the usual signification of the word "tract," as applied to land, is contiguity of the parcels of property, the question remains as to the proper definition of it in its application in this case to trust deeds under the constitution and laws of this state.  Section 111 of the constitution provides that "all lands comprising a single tract sold," etc., "shall be first offered in subdivisions not exceeding 160 acres," etc., "and then offered as an entirety, and the price bid for the latter shall control only when it shall exceed the aggregate of the bids for the same in subdivisions as aforesaid."  By Ann. Code 1892, § 2443, it is provided that "all lands comprising a single tract, and wholly described by the subdivisions of the governmental surveys, sold under mortgages and deeds of trust hereinafter executed, shall be sold in the manner provided by section 111 of the constitution."  In our view the lands involved in this litigation comprised only a single tract, and they therefore should have been sold as if they lay contiguously.  We are satisfied that, within the purview of the law, the fact that eighty acres of the property were separated from the main body of the land in the conveyance did not make that eighty acres a separate tract.  *Pierce v. Reed,* 3 Neb. (Unof.), 874, 93 N. W., 154; 27 Cyc., p. 480. The text of this latter is as follows: "On the other hand, although the premises may be susceptible of division or actually divided,

92 Miss.—26.

yet if they are used, occupied, or naturally constitute one farm, or one lot, the property should be offered as a whole." We have here the property recognized as one plantation for years, bought as such by the grantors, and so conveyed by them in the mortgage, and we have the further fact that one of the mortgagors, being there present, himself took this view and urged upon the trustee to sell accordingly. This conclusion would have no effect, of course, upon the actions of a trustee in selling separate and independent plantations, where the question of contiguity might be decisive. The ground of our opinion, in the case before us, is the fact of this and the body of the land being one plantation and the home place.

On the other proposition we think the sale was properly vacated by the court below, because there was no sufficient record, before the sale, of the substitution of the trustee. We cannot escape the conclusion that the result of the decisions of our court means that this substitution must precede the sale, and must so appear that it would furnish evidence of title to the purchaser at the trustee's sale such as would be good in an action of ejectment. It is said in the case of *Hyde* v. *Hoffman* (Miss.), 31 South., 415, 416, that "the statute was intended, not only to give security to titles, but to induce bidders to offer a fair price for the property sold." *White* v. *Jenkins,* 79 Miss., 57, 28 South., 570; *Shipp* v. *New South B. & L. Ass'n,* 81 Miss., 17, 32 South., 904. In this last case the court said: "It was the very purpose of the statute that there should be record of such substitution as of all other substitutions of trustees." Under the act of 1896 it is distinctly provided that sales of land made by substituted trustees "shall not convey the interests of the grantor or grantors therein until the substitution appear of record in the office of the chancery clerk of the county where the land is situated. Such substitution may appear by a separate instrument recorded as other recordable instruments, or it may be attached to, or a copy thereof may be indorsed by the chancery clerk on, the deed book where such deed of trust is recorded." Laws 1896,

p. 105, c. 96.    In the case at bar there was certainly no sub-
stitution by a separate instrument, recorded as other recordable
instruments, because the paper of substitution was not acknowl-
edged, so as to be recordable, and it was not pretended to be re-
corded as a separate instrument.    It certainly was not bodily
attached to the deed book on which the trust deed was recorded,
and there is no showing that a copy of it was indorsed by the
chancery clerk on the deed book where the trust deed was re-
corded.    Besides, it must be observed that Provine was the trus-
tee in the original trust deed, and that, in his paper refusing to
act, he refuses to act as trustee "named in the deed of trust to
me executed by Jas. Thornton [and others, naming them] on
the 1st day of January, 1900, and recorded in the chancery
clerk's office in Calhoun county, Mississippi, in Deed Book ——,
page ——."    On this refusal the action of Newberger was to
make and sign the substitutionary paper, reciting that "on ac-
count of the refusal of J. F. Provine to act as trustee in a cer-
tain deed of trust executed to him as trustee on January 1,
1900, by Jas. Thornton [and others, naming them], wherein I,
the undersigned, am beneficiary, I hereby make, constitute and
appoint W. E. Moring trustee in place and stead of said Provine,
according to the provisions of said deed in trust."    The blanks
in the first paper were never filled until long after the sale.

If it could be held that there was a sufficient copy of these
two papers, indorsed by the chancery clerk on the deed book
where the deed of trust is recorded, still, if a person contemplat-
ing a purchase had gone there, he would not have found the deed
as mentioned, but would have seen recorded a trust deed from
Jas. Thornton "of the first part, J. F. Provine of the third
part," without the name of any party of the second part or bene-
ficiary in the instrument.    It is true that at the head of the in-
strument, and before it begins, there appear the words, "Jas.
Thornton, Deed of Trust to Edwin Newberger."    That recorded
trust deed shows an indebtedness to Provine, the party of the
third part; and the conveyance is to the party of the second part,

who does not appear in the instrument, and it proceeds to state that "whereas, the party of the first part is indebted to the party of the third part [Provine] in the sum," etc., and it proceeds to provide that, on default, it should be lawful for the party of the second part, whom it does not name, at the request of the party of the third part, who is Provine, to take possession and sell, etc., and it concludes that, in the event of the death of the party of the second part, not named, or his refusal to act, the party of the third part, Provine, is empowered to fill his place by appointment. If the mistake was in copying, and if the original trust deed was right, it would not alter the case, because the reference is to a deed book without number or lettering and the page left blank, and so, if the contemplating purchaser had found the deed as it was recorded in the deed book, he would not have found any such instrument as he could buy under, and could not have proceeded in an action of ejectment. In fact, he would have been powerless, except by invoking the intervention of the chancery court. If there had been no attempted record of the instrument, but a reference to a trust deed lodged for record, and it had been left there for record, the rule would have been different.

The doctrine of putting one on notice cannot apply to a case where a particular deed is referred to, even if it had been referred to by the proper deed book and its page, when that deed has on its face no legal pertinency to the actual sale. We think that, where a copy of such papers "may be indorsed by the chancery clerk on the deed book where such deed of trust is recorded," there should be some showing that it was the act of the chancery clerk, though we do not decide now that this or the blanks in the paper would avoid the trustee's sale.

*Affirmed.*