Whitaker *v.* State.*

[106 So. 96. No. 25047.]

(Division B. Nov. 30, 1925.)

Indictment and Information. *Indictment held found "at the court-house," though under separate roof a few feet away.*

Even if grand jury as part of court must operate "at" the court-house, its deliberations and findings of indictments were, for all practical purposes, within the requirement of the law so that its indictments were valid, where the building designated by board of supervisors, under Hemingway's Code, section 3698, as place for holding the court while new courthouse was being built in place of the old, and, not having accommodations for the grand jury, the sheriff obtained a room therefor, under a separate roof, a few feet away from the building used as the courthouse.

*Headnote 1. Indictments and Informations 31 C. J., section 384 (Anno).

Appeal from circuit court of Scott county.

Hon. G. E. Wilson, Judge.

Paul Whitaker was convicted of manufacturing liquor and he appeals. Affirmed.

*A. W. Cooper* and *Eastland & Mize,* for appellant.

It is conceded that the board of supervisors designated the Walker warehouse, known as the old Methodist Church building, as the place for holding the circuit court; the judge of the court and the sheriff of the county both designated the said W. H. Walker warehouse as the place for holding the court. The judge entered a solemn order on the minutes adjudicating said warehouse as the place of holding court, and said order provided that the sheriff had also proceeded to designate said building for such purposes, but notwithstanding all of this the grand jury was sworn and empaneled in the W. H. Walker warehouse building, after which they proceeded to the Quinn building where they met, deliberated, voted and returned their indictment in this case.

The Quinn building was a separate and distinct building from that designated by the board of supervisors, the judge, and the sheriff—said Quinn building being on a different lot of the town, being owned by a different party, and being wholly disconnected from the W. H. Walker warehouse by some distance.

We respectfully submit that the motion of the appellant to quash the indictment should have been sustained; that the court's overruling said motion was a fatal error. Hemingway's Code, section 3698; *Harris* v. *State,* 72 Miss. 960; also see *Sexton* v. *County,* 86 Miss. 380.

An indictment returned by the grand jury that meets, examines, deliberates, votes and returns an indictment away from the court house designated by law is void and destitute of any legal effect whatever.

If the indictment in this case is legal, then a grand jury may meet, deliberate and return an indictment at any place in the county, and it would not be necessary to have a court house.

*F. S. Harmon,* Assistant Attorney-General, for the state.

It is urged in this case that this indictment is utterly void because predicated on testimony taken by the grand jury while thus meeting in this room in the Quinn building. A brief discussion of the fundamental issues involved will convince this court that there is no merit in appellant's contention.

In the first place the grand jury, according to the sworn testimony, admitted by the appellant, was empaneled, charged and sworn in the Walker warehouse. The grand jury, therefore, came into being, according to law, in the regular statutory manner, nor is there any contention that the grand jury failed to return this indictment in open court at the place where said court was being held. The whole point is that the indictment was found by the grand jury meeting a few feet away under another roof. What of it? See section 3698, Hemingway's Code.

After the grand jury has been empaneled, charged and sworn, it is in a considerable measure an independent body with grave and important statutory duties to perform, 28 C. J. 763.

In Mississippi it is made the duty of the grand jury by statute to investigate jails, to visit the poor houses, to examine the record of various county offices, etc. The grand jury essentially is an inquisitorial body with free access to all the records and all the witnesses it may choose to summons. While the members are enjoined to secrecy, the grand jury is not separated from the rest of the world. On the other hand the law makes every effort to make it easier for the grand jury to get in touch with all sources of information. The grand jury may even adjourn and reconvene later on during the term of court. There is no fundamental reason, therefore, for insisting that the grand jury should deliberate under the same roof in which the trials are held. At the point where it touches directly the circuit court, that is, its empanelling, the charge of the trial judge, the return of indictment in open court, and its final discharge, the

grand jury must be where the court is held. But there is
no reason whatever, either by statute, or on general prin-
ciples, why the grand jury should hold all its deliberations
under the same roof with the court. Nor does the
statute specifically require it, since the word "court"
here means the tribunal itself, and not its various sub-
sidiary arms. To accept appellant's contention here
would mean that one could argue 'with equal logic that
a petit jury considering a case could not leave the court
house to visit a restaurant, or take a walk, or visit the
scene of a crime. Such a view is ridiculous to be sure.

The Walker warehouse was all right as far as it
went, but its facilities were inadequate. The board
of supervisors had failed to provide sufficient suit-
able buildings for all the necessary work of the court,
and having failed to make such provision, the sheriff of
the county quite properly provided additional facilities,
as under section 3696, Hemingway's Code, he had au-
thority to do.

The Harris case cited by appellant is not in point here.
The board of supervisors, sitting as a court, in that case,
did not meet at the courthouse, as required by law. In
the case at bar, the court did meet at the place designated
as a courthouse, and wherever and whenever the grand
jury directly touched the court it met at the same place,
but when the grand jury was sitting as a separate inquisi-
torial body it met in a separate building, as required by
the necessities of the case.

There is a sound public policy under the requirement
that the courts should be held at a fixed place. It is im-
proper and unfair to force litigants to run around to
remote corners of the county for the trial of their cases,
and to have the citizens uncertain as to the place of meet-
ing. At the time of the American Revolution alleged of-
fenders were carried to England for trial, and one of the
worst abuses of the time was that of forcing men to
trial in some uncertain and remote place, away from

their friends and neighbors. If justice is to be meted out, some fixed abode as her temple must be selected. But if offenders against the law are to be brought to justice, the grand jury must be free as an inquisitorial body to go to various parts of the county, to examine various public buildings, and call before it all those whom it desires to interrogate. All this was possible under the facts of the case at bar. And while we have no decided case directly supporting our contention, we are confident that the logic of our position will result in the affirmance of this cause.

Holden, P. J., delivered the opinion of the court.

Paul Whitaker appeals from conviction on a charge of manufacturing intoxicating liquor. Reversal is urged on the ground that the court erred in not sustaining a motion to quash the indictment as void for the reason that the grand jury which found and returned the indictment deliberated and made its findings in a room disconnected from the courthouse where the circuit court was being held.

The question arises from the following circumstances: The indictment was returned at the July, 1924, term of the circuit court of Scott county, and at that time the courthouse of the county had been torn away in order to build a new one, and the board of supervisors, in compliance with section 3698 of Hemingway's Code, provided and designated the old Methodist Church, otherwise known as the W. H. Walker warehouse building in the town of Forest, as the place for holding the court. The court was organized there, including the grand and petit juries, and the judge proceeded to hold the term.

After the grand jury was organized and charged by the judge, it was discovered that there was no other room in the building large enough to hold the grand jury during its deliberations for the term, as the largest room,

outside of the courtroom where the court was being conducted, was a room about six by twelve feet in dimension, really not large enough for a petit jury or to hold witnesses who might be summoned to testify during the term.

The sheriff, realizing the necessity of securing another room for the grand jury to deliberate in, obtained a room for that purpose about fifteen feet away, in a direct line from the building used as the courthouse, and it being about forty feet from the door of one building to the door of the other. In this room the grand jury performed its duties and found the indictment involved in this case. The grand jury was impaneled in the courtroom, and, of course, returned indictments in open court.

The room occupied by the grand jury during its deliberations was under a separate roof from that of the designated courtroom and was located upon a different lot from that upon which the courtroom was situated. However, the room was in close proximity to the courtroom, and was practically connected therewith so far as the court and the grand jury were operated togther as the circuit court of the county.

The exact complaint urged by appellant is that the indictment returned by the grand jury is void because is was found by the grand jury at a place, not at the courthouse, where it was not authorized by law to meet and find indictments. It is argued that this court has held that the acts of the board of supervisors are void when performed at a place not the courthouse of the county. It is also suggested that the well-known rule requires that courts must be held at the courthouse of the county, and that, as the grand jury is an essential part of the circuit court, it is necessary for it to operate in the courthouse when the court is held, otherwise its findings will be void because they were made at a place unauthorized by law. Several cases are cited, among them being the *Friar's Point Case* (Miss.), 18 So. 123, which in turn

cites the case of *Capitol State Bank* v. *Lewis*, 64 Miss. 727, 2 So. 243. We have examined these cases and believe that we understand the pronouncements therein, but we do not think they are controlling in the case before us.

It is our opinion that, conceding the grand jury is not an independent part of the circuit court and may not function at some other place than the courthouse, and conceding further that the finding of the indictment at a different place from that of the courthouse in the same city would make the indictment void, still we do not think the indictment is void in the instant case, for the reason that the room or building used by the grand jury, which was selected by the sheriff under pressing necessity because the designated courtroom was inadequate for the court purposes was so closely adjacent to that of the courtroom as to be, practically and in effect, a part of the same building. To put it in another way, the distance of a few feet between the buildings did not render them, for all practical court purposes, separate buildings; they were used together, in the same immediate atmosphere, though separated by a short space, as the courthouse in which the term of court was being held.

We may state it in another way in which our view can probably be better understood, and that is to say, for all practical purposes within the contemplation of the law, the deliberations and findings of the grand jury in the separate room was a functioning of the grand jury "at the courthouse." We do not understand the contention to be that the grand jury must sit "in" the courtroom, but the provision is that the court must convene and operate "at" the courthouse. Now, as we see it, the grand jury did perform its duties and find its indictments "at" the courthouse. True, it was a few feet away from the courthouse building used for the trial of cases, but, nevertheless, in legal contemplation, it was "at" the courthouse; therefore we think the grand jury

in this case sat at the courthouse, and that its findings were valid.

In view of these conclusions, the judgment of the lower court is affirmed.

*Affirmed.*