TEXAS PACIFIC COAL & OIL CO. *et al. v.* MULVIHILL.

(In Banc. Oct. 28, 1946.)

[27 So. (2d) 719. No. 36178.]

Watkins & Eager, Butler & Snow, Howie, Howie & McGowan, and Gwinup & Heidelberg, all of Jackson, J. F. Barbour, Jr., of Yazoo City, Brandon, Brandon & Hornsby, and J. H. Keyer, all of Natchez, Brunini, Brunini & Everett and Dent & Ward, all of Vicksburg, and Eugene T. Adair, of Fort Worth, Tex., for appellants.

500

Jackson & Young, Joe H. Daniel and Milton H. Mitchell, all of Jackson, for appellee.

Argued orally by **George Butler, Jr.**, for appellants, and by **Milton H. Mitchell**, for appellee.

**L. A. Smith, Sr., J.**, delivered the opinion of the Court.

The appellee filed an original bill of complaint in the Chancery Court of Adams County as the widow and sole heir of P. W. Mulvihill, Jr., who died on June 21, 1940. Appellee complained that a trustee's sale and the trustee's deed were both void, and that appellee, as the widow and sole heir of P. W. Mulvihill, Jr., deceased, was the owner of Allendale Plantation, so that the claims of the appellants thereto were clouds upon her title, which she

asked to be cancelled, and also prayed that her title be confirmed. She also, in her original bill, said she tendered the full amount of principal and interest that the court might find to be due from her, if any, upon an accounting between her and the appellants. Her successful prosecution of this suit depends upon her ability to avoid the trustee's sale and deed.

The decedent purchased certain lands in Adams County March 18, 1918, which, under date of April 17, 1920, he conveyed in a deed of trust to W. Howard Pritchart, as trustee, consisting of two plantations, The Allendale Plantation and Clifford Plantation. The indebtedness secured by the trust deed was evidenced by five notes of $2,000 each, payable annually, to the Peoples Savings Bank of Natchez, which bank assigned a two-fifths interest in said indebtedness to the Bank of Commerce of Natchez. Thereafter, P. W. Mulvihill, Jr., became non compos mentis, and so continued until he died. On April 18, 1924, default having been made in the payment of certain of the notes above described, the trustee advertised the sale of said land by foreclosure. At the sale, the Bank of Commerce and the Peoples Savings Bank jointly purchased both plantations in the proportions of two-fifths by the Bank of Commerce and three-fifths by the Peoples Savings Bank, and on May 10, 1924, the trustee executed his deed as such to them accordingly.

The appellants, who are the defendants in the original bill of complaint, were made such thereto because of their alleged ownership or claim of interest in said tract described as the Allendale Plantation, or the oil, gas and other minerals therein or thereunder, having acquired the same subsequently to the said foreclosure sale all because of transactions traced to the trustee's sale to the two bank and their vendees and alienees.

Appellee attacked the validity of the foreclosure and trustee's deed on five grounds, to-wit:

(a) That the cestuis que trustent "did not pass any resolution or take any other legal action declaring default

in the payment of said indebtedness, or authorizing the foreclosure of said deed of trust by said trustee, and the actions of the trustee were, therefore, null and void, and were a fraud upon the rights of the complainant herein, and her husband P. W. Mulvihill, Jr., who, at the time of said attempted foreclosure, was wholly mentally incompetent.''

(b) ''There is no provision in said deed of trust by which the owner and holder of the indebtedness thereby secured might become a purchaser under any sale'' by the trustee, and that the action of the trustee was a sale as an entirety to the owners of the indebtedness secured by the trust deed, two-fifths to the Bank of Commerce and three-fifths to the Peoples Savings Bank.

(c) ''The deed of trust describes several separate parcels of land which are not contiguous, but are many miles apart, and by the Trustee's deed it appears contrary to the requirements of Section 888, Mississippi Code of 1942, which was in effect at the time of said purported and attempted sale in this that said tracts were offered first as one tract known as 'Clifford Plantation,' then as another tract known as 'Allendale Plantation,' and there was bid for the first tract $5,500, and for the second tract $6,000, or a total of $11,500. Then when said two separate tracts and parcels were then offered both together, the two banks, as the owners of the indebtedness both together bid for both plantations the exact total of the separate bids, and the trustee attempted to make the sale of the plantations together as an entirety, when as a matter of law, the sale of the property as an entirety as described in a deed of trust can be made only where the price bid for the said several separate tracts and parcels shall exceed the aggregate of the bid made for the separate tracts.''

(d) ''That as to the Allendale Plantation and the property hereinabove described, it should have been sold according to the provisions of Section 111, Mississippi Constitution of 1890, which requred that it should be offered in subdivisions not exceeding 160 acres, or quarter sec-

tion, and then offered as an entirety, and that the price bid for the latter shall control only when the price for the entirety shall exceed the aggregate for the said land as offered in subdivisions, as required by said section of the Constitution, and also as required by Section 888, Mississippi Code of 1942, because the deed of trust in none of its provisions waived any of the constitutional or statutory requirements as to mode of sale nor does the deed of trust at any place authorize the sale of the several tracts of land therein described as an entirety, contrary to the requirements of said constitutional and statutory provisions.''

(e) ''That said deed of trust, Exhibit One hereto, among other things, provides that P. W. Mulvihill, Jr., as Party of the First Part, 'expressly reserves the right to have released from this deed of trust either said Clifford or Allendale Plantation at any time he may sell either of said plantations, upon the payment by him of $5,000 upon the principal of his said notes and the interest accrued on said notes to the date of payment, et cetera,' and that the amount received at said trustee's sale was largely in excess of said $5,000 and the accrued interest, and therefore, was tantamount to payment of the said $5,000 and accrued interest, and thereby there was released to the said P. W. Mulvihill, Jr., his successors and heirs, all of said Allendale Plantation, and the attempted transfer by said trustee thereasto was therefore null and void.''

The prayer of the bill was that her title to the Allendale Plantation be confirmed and quieted, and that all of the instruments and conveyances set forth in the original bill executed or recorded since March 18, 1918, be cancelled as casting clouds and suspicion upon her title to the Allendale Plantation, and that T. F. Hodge and the Texas Pacific Coal and Oil Company be enjoined from trespassing thereupon, drilling or attempting to drill any oil, gas or mineral wells thereupon.

It will thus be seen that the prayer of the original bill seeks relief only as to the Allendale Plantation and seeks

no relief as to the Clifford Plantation. In this Court appellee changes her position and now says in her brief that she ''attempts to show that the foreclosure sale of those tracts of land described in the deed of trust as Allendale Plantation are null and void for the following reasons: (1) That the trustee was not requested to foreclose by the holders of the indebtedness as was required by the deed of trust and therefore the trustee's acts were null and void and the sale of no effect (2) that the holders of the indebtedness by agreement to purchase jointly and by purchasing jointly at the foreclosure sale have suppressed the competition at a public auction and have worked a fraud on the trustor, and (3) that the foreclosure sale was not conducted in conformity with Section 888, Mississippi Code of 1942, and Section 111 of the Constitution, and therefore the sale was null and void.'' In the original bill it is to be noted that the charge was made that the Clifford and Allendale Plantations were not contiguous but were many miles apart, while no charge was made that the various components of the Allendale Plantation were not contiguous. It will also be noted, as stated supra, as to which we will not go into detail, that the grounds upon which appellee argues in support of her position here vary substantially in some phases from those set out in her original bill of complaint.

We feel it necessary to discuss only the first and last of the present positions of appellee. To the original bill appellants filed general demurrers on the grounds that there was no equity on the face of the bill; that it was shown on the face thereof that appellee had no title to the lands involved, and that the original bill did not allege any facts or defects in the foreclosure sale which invalidated it; and that the titles of appellants were not clouds upon the title of appellee, who was not entitled to any relief either at law or equity. These demurrers were overruled and defendants granted an appeal to settle all the general controlling principles of the case.

The trustee's deed describes the Allendale Plantation as follows: "All the following described tracts of land situated in the County of Adams and State of Mississippi about fifteen miles from the City of Natchez, and now known as 'Allendale' plantation containing thirteen hundred acres, more or less, and consisting of the following tracts of land:

"First: All those lots and tracts of land known by the general name of 'Allendale' plantation at the time of the death of Routh H. Phipps, situated on the waters of Sandy Creek in said Adams County, Mississippi, and described as follows, to-wit: The Home Place, consisting of two parcels, namely Sec. 24 T. 6, R. 1 W, containing 398.60 acres and parts of Secs. 6 and 23, T. 6, R. 1 W, containing 100 acres, more or less, said two tracts of land constituting the Home Place, being together bounded on the west and southwest by lands of the Estate of Nathaniel Hoggatt, Jr., deceased, on the North and East by Wailes tract, being the tracts of land hereinafter secondly described, and on the South east by lands of the Estate of Jesse Mock, deceased, the whole containing 493.66 acres, more or less. And also in the same township and range a tract of land estimated to contain about 100 acres, bounded on the South and East by lands of the Estate of Nathaniel Hoggatt, Jr., deceased, on the North East by lands formerly of Mrs. Anna W. Winston, on the North by lands formerly of S. L. Guice, and on the West by land now or formerly of John G. Fleming.

"Second. The North West quarter and West Half of North East quarter of Sec. 1, T. 6, 1 W., Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of Sec. 2, T. 6 N, R. 1 W., and fractional Section 33, T. 7 N., R. 1 W, containing 703 acres, more or less."

With reference to the claimed invalidity of the trustee's sale on the ground that the trustee was not requested to foreclose by the holders of the indebtedness, as was required in the deed in trust, and therefore the trustee's

acts were void, the trust deed recites: "And in pursuance of the request of the legal holders of the notes secured by said deed in trust to foreclose said deed in trust by reason of default in the payment of the first note secured," and so forth. Appellee cites Vaughan et al. v. Powell, et al., 65 Miss. 401, 4 So. 257, to the effect that the conditions of a trust deed must be strictly complied with upon foreclosure, and argues that because there was no resolution of the Board of Directors of the two banks, on the minutes, requesting the trustee to foreclose, that there were no such requests. She cites no authority in support of her theory that absence of a resolution by the Board of Directors is proof of absence of requests, but refers to the case of Walker et al. v. Brungard, 21 Miss. 723, where the trust deed required the joint request of Brungard and Walker, the latter being the grantor. Brungard requested, but there was no request by Walker, and the Court held that the execution of the power of trustee must rest upon existing circumstances conferring the right to exercise it and in accordance therewith. Appellant replies that the bill of complaint contains no allegations that the beneficiaries did not request sale of the property while the trustee's deed, presumptively correct, alleged that the holders of indebtedness did request that the sale be made. McCaughn v. Young, 85 Miss. 277, 37 So. 839.

Moreover, as appellants argue, that where the president of a bank beneficiary in a deed of trust appointed a substituted trustee without an order of the Board of Directors authorizing him to do so, the appointment was valid, basing their argument or Chandler v. Bank of Brooksville, 181 Miss. 529, 178 So. 797, and quoting from Adams et al. v. St. Clair et al., 185 Miss. 416, 188 So. 559, 560, where this Court said: "The effect of which holding of the court is that the power of appointment is not necessarily and in all events vested in the board of directors merely because the power is given to the corporation by name. In that case the Court, after holding the appointment valid, observed that the act of the president was

also ratified by the bank by its claiming the property sold pursuant thereto.'' If the sale by the trustee here had been void, the banks could not have ratified it to the prejudice of appellee. But since it was neither void nor voidable, in our judgment, we think that the purchase of the land at the trustee's sale, by the bank beneficiaries, ratified the action of the trustee, even though a resolution by the Board of Directors were necessary as claimed by appellee, with which we do not agree, however. Speaking with reference to a similar question the Supreme Court of Michigan in Gage v. Sanborn, 106 Mich. 269, 64 N.W. 32, 33, said: ''We are not cited to authority for the proposition that all the details of every-day business in banks must be considered in directors' meeting, and their action be spread upon the journal of the meeting. Such a practice would complicate the business of banking, and be at variance with the ordinary course of business as it is commonly done. To go further, and allow a debtor to question the regularity of proceedings on the part of the bank in such cases, would have little reason to support it.''

Every step in a bank's business cannot be made to require action by its Board of Directors. Even its by-laws can not provide for all the minutiae of the duties and obligations of the executive officers of a bank in its multiple daily transactions. Each has many functions to perform, singly and together in committees. Collection of the bank's bills receivable is not a matter that would ordinarily require the convening of the Board of Directors and a resolution on the minutes of the bank directing executive officers charged with such duty to perform it. Such a course would be impracticable, unnecessary, and most unusual, and unreasonably burdensome upon busy men and on the banking business.

The Supreme Court of Massachusetts in Bristol County Savings Bank v. Keavy, 128 Mass. 298, was of the opinion that: ''It would be a great obstacle to the successful management of savings banks and other corporations, if no suit for the collection of a debt could be instituted except

by vote of the trustees or directors.'' So, when the two banks bought the land at the sale, even had there been a requirement of a resolution of the directors entered on the minutes of the banks, which requirement had been ignored, and since the sale was neither void nor voidable, the banks ratified it by accepting the trustee's deed to the lands involved and when so ratified it became obligatory upon all the parties concerned in this case. The rule that subsequent confirmation or consent is equivalent to a previous command is as applicable to corporations as to individuals. Planters Bank v. Sharp, 4 Smedes & M. 75, 43 Am. Dec. 470.

We think that the bank was not required to enter a resolution on its minutes requesting the trustee to make the foreclosure, in order to collect its money loaned on the lands involved, but that any executive officer of the bank might do so. The banking business is a very complicated and exacting process and while fundamentally many details thereof must depend upon appropriate action of the directors evidenced by entries upon the bank's minutes, on the other hand, many details need not be so treated, and authority to a large extent in dealing with collections must be reposed in the executive officers of the bank. It is not conceivable to us as practicable to require a resolution of the Board of Directors every time a trust deed is to be foreclosed. A board of directors is composed of business men engaged in their own private enterprises and can not be constantly in attendance upon directors' meetings at the banks. It is ordinarily and generally the duty of executive officers, in our judgment, to see to collection of moneys due to the bank, and where default is made in payment thereof it is within their authority to cause steps to be taken to collect, such as foreclosures of trust deeds for instance. We, therefore, see no merit in this position of the appellee.

This now brings us to the discussion of the position of the appellee that the foreclosure violated Section 888, Code of 1942, and Section 111 of the Constitution of Miss-

issippi. Section 111 of the Constitution deals with sales under executions and requires that "all lands comprising a single tract sold in pursuance of decree of court, or execution, shall be first offered in subdivisions not exceeding one hundred and sixty acres, or one-quarter section, and then offered as an entirety," and so forth. Section 888, Code 1942, directs that "all lands comprising a single tract, and wholly described by the subdivisions of the governmental surveys, sold under mortgages and deeds of trust hereafter executed, shall be sold in the manner provided by section one hundred eleven of the constitution for the sale of lands in pursuance of a decree of court, or under execution."

A perfect example of a single tract wholly described by the subdivisions of the governmental surveys is found in McClusky v. Trussel, 90 Mss. 544, 44 So. 69, where the land is described as E½ of SE¼ Sec. 34, T. 23, R. 9 E, and W½ of Section 35, T. 23, R. 9 E. The statute does not refer to governmental surveys merely, but to subdivisions of governmental surveys, while the Constitution directs that the subdivision shall not exceed 160 acres, or one quarter section. Governmental surveys and the subdivisions thereof are covered by the rules of survey, beginning with Section 751, Title 43 U. S. C. A., dealing with public lands. Discussing these rules the Supreme Court of California in Bullock v. Rouse, 81 Cal. 590, 22 P. 919, declared that the lines are not ascertained by the survey, but that they are created by the survey. And the Supreme Court of the United States in Moss v. Ramey, 14 Idaho 598, 95 P. 513, affirmed by 239 U. S. 538, 36 S. Ct. 183, 60 L. Ed. 425, held in effect that public lands are to be surveyed into townships, six miles square, and each, in turn, subdivided into 36 sections of a mile square, except where a line of an Indian Reservation or of a tract of land theretofore surveyed or patented or the course of a navigable river may render this impracticable, and in that case the rule must be departed from no further than such particular circumstance require. When P. W. Mulvihill,

Jr., conveyed the lands involved in trust to the two banks he referred to them as the Allendale plantation containing thirteen hundred acres, more or less. He used the same description then as the one under attack here by the claim that foreclosure required the same lands to be sold in subdivisions of the governmental survey, of which it is manifestly incapable. We may take the several parcels comprising the whole Allendale plantation, and none of them are wholly described by subdivisions of governmental surveys. The Home Place consists of two parcels Section 24 and parts of Section 6 and Section 33, which is further described as being bounded by the lands of certain individuals otherwise necessary the complete the description. The one hundred acre tract is described as bounded by the lands of certain individuals. And the balance of the land is described as the NW¼ and W½ of NE¼ of Section 1, T. 6, R. 1 W., lots numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 and 11 of Section 2, fractions of Sections 33, all containing 703 acres, more or less. Part of this latter parcel is described by subdivisions of the governmnetal survey and perhaps capable of being sold thereby in 160 acre blocks, but the numbered lots are not, and the fractional section is not. Since all of these lands together comprised the Allendale plantation when conveyed in trust for the benefit of the banks, and the trustor used this description he must have known at the time that it was not capable of being sold in accordance with Section 111 of the Constitution and Section 888 of the Code of 1942, which has come down from preceding Codes. The language of the statute as stated is not limited to governmental surveys but to subdivisions of governmental surveys, while the Section of the Constitution defines such subdivisions as 160 acre tracts, or one quarter section.

The appellee, as we understand it, argues that the trustee, before sale, should have had his land surveyed so as to cut it up into subdivisions capable of being sold in 160 acre or one-quarter section blocks. The parties could have made such an agreement at the time the trust deed

was executed, but they did not do so, and such a condition can not be engrafted upon the transaction. However, an agreed private survey would not comprise "subdivisions of governmental survey." No suggestion as to how the expenses of such a survey are to be paid is made to us, nor is any authority cited for it. The deed of trust refers severally to the Clifford plantation and the Allendale plantation and calls them "said plantations." Both plantations being treated as complete units, or single tracts. With reference to the Allendale plantation, it was treated and recognized as one plantation. It was not required to be entirely and completely contiguous in all its parts. Provine et al. v. Thornton et al., 92 Miss. 395, 46 So. 950. There is nothing in the original bill of complaint in the way of an averment that the Allendale Plantation is not a single tract, or that any of its parts are not contiguous to each other.

Appellee contends that the purpose of the Legislature in passing this statute was to protect the rights of a grantor when his property is sold under a mortgage or deed of trust because, as held in Kelly v. Carmichael, 217 Ala. 534, 117 So. 67, 71, "a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, and 'tends to prevent odious speculation upon the distress of the debtor,' and enables him to redeem some of the property without being compelled to redeem it all."

The reason advanced is that it is advantageous to a trustor to have his land so sold, but we are dealing here with a specific statute, the meaning of which is clear and definite. The lands must comprise a single tract and be wholly described by the subdivisions of the governmental surveys. "Allendale Plantation" is not within the language of that statute or Section 111 of the Constitution. It can not be sold in parcels of 160 acres because it was not so described as to make it capable of such a sale when the trust deed was executed, which was the contract between the banks and the trustor. We are,

·therefore, of the opinion that the trustee's sale was not void as averred in the bill of complaint, and as argued in appellee's brief here on that point.

In our judgment, therefore, the demurrers should have been sustained, and for the error of the trial court in not sustaining them, the cause is reversed and remanded for further proceedings not inconsistent herewith.

Reversed and remanded.

**Sydney Smith, C. J.,** did not participate in this decision.