CLARK *v*. SAYLE, et al.

In Banc.    Mar. 13, 1950.

No. 37417 (45 So. (2d) 138)

**W. I. Stone,** for appellant.

**W. A. Lomax,** and **Cowles Horton,** for appellees.

**Smith, J.**

This case has been before us twice heretofore, this being the third appeal thereof. Our first decision is reported in Clark v. Carpenter et al., 201 Miss. 436, 29 So. (2d) 215, 216; our last in Clark et al. v. Clark, 203 Miss. 28, 33 So. (2d) 293.

The facts are correctly stated in our first opinion, supra, except in one particular, so it is not necessary to repeat them all here. The particular wherein the facts found to exist in our original decision, later ascertained to have been erroneously determined is that the contiguous 80-acre tracts were actually sold first separately, and then together, whereas we stated that "The Trustee offered each 80 separately and refused to combine one with the other." The original bill averred, however, that the two contiguous 80-acre tracts were first sold separately and then combined together and sold, while the separated eighty acres were sold only separately, and the whole 240 acres were not then bunched and sold as a whole. This, the answer admitted. Nevertheless, at the first trial proof was offered and admitted without objection to

the effect recited in our opinion; so the inconsistent finding by us was in harmony with the proof as then made, and was quite a natural result of the state of the record. Especially was this true, because there was no objection to the introduction of the evidence in contradiction to the averments and admissions in the pleading; there was no point raised in the trial court on the ground of variance; and this situation was not assigned as error here.

We, therefore, held that ''the two adjoining 80's should have been, but were not, finally offered together, which, in this case, vitiates the entire sale, including the sale of the detached 80, for the reason there is no proof as to what that 80 brought at the sale, the trustee's deed simply reciting the lump consideration of $600, and conveying all land under one conveying clause. There is no way to separate the elements of sale, and declare one valid and the other invalid, assuming, but not deciding, that the detached 80 did not have to be offered with the two adjoining 80's as one sale.'' The decree of the chancery court was reversed and remanded.

On remand, that court construed our holding in the opinion, supra, to mean ''that the sale was void under the proof then offered by the complainant, amounted to a final adjudication in that behalf, when as a matter of fact the status of the case on remand was the same as if a peremptory instruction had been erroneously granted in favor of a defendant in a circuit court.'' We, therefore, in the second appeal mentioned above, again reversed and remanded for a new trial ''when the complainant will be entitled to introduce his evidence anew, together with such additional evidence as he may desire to offer, and the defendants be allowed to meet the proof offered by the complainant by showing that the land was offered for sale in a lawful manner instead of the way it was shown to have been offered by the complainant's evidence on the former trial.'' 203 Miss. 28, 33 So. (2d) 293.

Upon the trial anew on the second remand, appellant, as complainant, offered to re-introduce the same evidence as to the sale as was produced at the first trial, to which objection was made on the ground that it would effect a variance between the averments of his original bill, admitted by the answer, and the proferred evidence. This objection was sustained, whereupon appellant asked leave to amend so as to harmonize the bill with the tendered testimony, which was denied by the court. The appellant in his reply brief in the case here had this to say as to the matter: "I am glad the Court did not allow the amendment because the case had been settled as the court had held positively that the sale was void." So, the point becomes moot, but we believe counsel mistook our original holding and the effect upon it wrought by our subsequent adjudication.

The third trial in the chancery court, following our second reversal and remand, resulted in a decree dismissing the original bill, from which the case was appealed here again.

On the instant appeal there are two issues for decision, which, if resulting in affirmance of the decree of the chancery court, render other issues irrelevant. The first is, was there sufficient advertisement of the trustee's sale? The second is, was the sale made according to law in such cases?

As to the advertisement of sale, the sole challenge to its validity is that notice was not posted "at the courthouse door", as required by the statute, Section 888, Code 1942, Section 2167, Code 1930, which statute contains the requirement, in addition the the publication of notice in a newspaper, "and by posting one notice at the courthouse of the county where the land is situated." Counsel cites the case of Fauntleroy et al. v. Mardis et al., 123 Miss. 353, 85, So. 96, in which we declared ▮▮ ▮ that "posting one notice at the courthouse" required its posting "at the courthouse door". This is true, and in view of the circumstances of the

instant case, it is indispensable that we now construe "at the courthouse door".

The factual situation in connection with posting the notice was that the courthouse was being repaired; the doors were down in order to replace them; the bulletin board, which ordinarily stood nearby, was misplaced; and the sheriff and others, including trustees in other foreclosure sales, had adopted the practice of posting notices on the face of a stack of pasteboard cartons containing books, near the office of the County Superintendent of Education, and about half way down the entrance hall of the courthouse. It was testified, without contradiction, that this extemporized bulletin board was conspicuous in the corridor, not far from the doors of the courthouse, that is to say, where the door-space was awaiting replacement of the old by the new one. Was this a posting "at the door of the courthouse?" We think so.

We have held that the words "at" and "near" are synonymous. Harris v. State ex rel. Dolan, 72 Miss. 960, 18 So. 387, 388, 33 L. R. A. 85. The Arkansas Court holds that "at" means "near to" or "in vicinity of". Shepard v. Hopson, 191, Ark. 284, 86 S. W. (2d) 30, 34. On page 651, Vol. 4, Words and Phrases, Permanent Edition, a number of decisions are collated to the effect that the word "at" is a word of somewhat indefinite meaning, its precise meaning being generally controlled by the context and attending circumstances. It is further there shown that "used in reference to place, it often means 'in' or 'within'; but its primary sense is 'nearness' or 'proximity'." In another case where a new courthouse was being built, and the place designated by the board of supervisors for a temporary courthouse was not large enough to accommodate the grand jury, and the sheriff obtained a room therefor, under a separate roof, a few feet away from the building in temporary use at the time, and in this room the grand jury met, we held that their effectuated indictments were valid under

the statute requiring the grand jury to hold its session "at" the courthouse. Whittaker v. State, 141 Miss. 788, 106 So. 96, 97.

The Texas Court has decided that statute providing that notice of sale under a trust deed shall be posted "at the courthouse door" does not mean that notices should be posted on or in the door, and the statute was sufficiently complied with where such notices were posted in the corridor of the courthouse, about forty feet from the front door, at the side of the stairway leading to the courtroom. Howard v. Fulton, 79 Tex. 231, 14 S. W. 1061, 1062.

We are, therefore, of the opinion that the posting of the notice in the case at bar, as described ante, complied with the laws of this state, and was a posting "at the courthouse door", in view of the authorities above cited.

This brings us to the next question,—was the sale lawfully made, since it did not bunch all of the three 80-acre tracts together, and then sell them as a whole, after each had been sold separately, and the contiguous tracts had been bunched and sold as a whole, but separately from the detached tract? This poses the problem,—were all three tracts used or occupied as, or naturally constituted, one farm, and therefore one farm within the meaning of Section 111, Const. 1890, as interpreted by this Court in Provine v. Thornton, 92 Miss. 395, 46 So. 950?

It is necessary here to consider the facts of the case in that regard, and in doing so, to bear in mind that on the point the burden of proof was on appellant, as complainant below. In our original opinion on the first appeal, we stated that it was not necessary to decide this issue, because we placed decision on another, which disposed of the appeal. In the Provine case, the detached acreage was about one-half mile from the main portion of the lands in controversy, but there was a road in constant use between the two, and both tracts were farmed and used as one farm, and had been so purchased; and

one of the mortgagors took this view and urged upon the trustee to sell accordingly.

██ ██ In the case at bar, the distance between the detached eighty acres and the joined hundred and sixty acres was also about a quarter or half mile, but there was no road connecting them,—at least, the records show none. In the case at bar, no one lived on or cultivated the detached eighty acres; the homestead stood on the one hundred and sixty acres, which the owners used for farming purposes. The separated tract had not been farmed since it was so used by Ed and Dora Carpenter during the lifetime of Ed, they being the parents of the owners of the land at the time of foreclosure. Questions to appellant himself, and his answers, on the witness stand, are illuminating:

"Q. About when was it that the land that was cultivated washed away? A. I guess they cultivated it on up until two or three years before he died; I don't know exactly how many years.

"Q. Old Ed died about 1932, didn't he? A. Something like that.

"Q. Who was doing this cultivating? A. Well, Ed and his tenants, I suppose."

It is to be remembered here that the trust deed foreclosed was dated May 1, 1936; this lawsuit was filed on April 23, 1942, and the land was sold by the trustees on December 1, 1941. It appears further that at the time Ed Carpenter cultivated it, he used not over four acres. But at the time of the sale, all cultivation or use of it as a farm had been abandoned for two or three years before Ed's death in 1932. There never were any houses on Section 21, the separate 80-acre tract. It developed that appellee considered it all one farm merely because the two separated parcels of land belonged to the same owner. The land has some timber on it, but the rest of it has long since washed away, according to the record. The children of Ed and Nora Carpenter actively farmed and cultivated the two contiguous 80-acre tracts, but

not the detached eighty acres. In view of these facts, we are of the unanimous opinion that the foreclosure sale here, although not bunching with the 160-acre tract this separated 80-acre tract so as to sell the 240 acres as a whole, was not void. On the contrary, the situation, conditions, and relation of the tracts to each other, and the owners to them, in the case at bar, are such that the Provine case is not applicable here.

In consequence of our views, supra, we are constrained to, and do, affirm the decree of the chancery court.

Affirmed.