R. N. Harris, Sheriff, *v.* State, ex rel., etc.

1. Board of Supervisors. *Place of meeting.* Code 1892, § 278. "*At the courthouse.*"

   A meeting of the board of supervisors, held in the office of the chancery clerk, in a building one hundred feet from the courthouse, is not "at the courthouse," within the meaning of § 278, code 1892, requiring such meetings to be at the courthouse, and this, although such building is owned and used by the county for offices for the chancery and circuit clerks and sheriff, and for a jail, and adjoins the courthouse yard, a gate of which is only twenty feet from the door of said office.

2. Same. *Improper place of meeting.* *Orders void.* *Local option election.*

   Where the board of supervisors meets at such office, and there acts on a petition for a local option election, its order thereon and an election held pursuant thereto, are void.

From the circuit court of the second district of Coahoma county.

Hon. R. W. Williamson, Judge.

Mandamus to compel appellant, the sheriff of Coahoma county, to issue to one Dolan a license to retail intoxicating liquors. The sole question presented is as to the validity of a local option election, held in said county in July, 1893, resulting against the sale, and which election, relator contends, was void, because the petition therefor was considered, and the order for such election was passed, by the board of supervisors at a meeting held at the office of the chancery clerk at Friar's Point,

which office is in a building separate and apart from the court-house.

The county of Coahoma was the owner of a lot in Friar's Point, held and owned for courthouse purposes, and on this lot had constructed a courthouse, without offices therein for any of the county officers.　It had also constructed on the lot a jail building, in which was situated the offices of the sheriff, circuit clerk and chancery clerk, and this building was used until its destruction by fire in 1887.　The chancery clerk's office had been in said building for many years, and the board of supervisors had regularly met therein until it was destroyed by fire in 1887, as stated.　It then became necessary for the board of supervisors to supply other offices, and, accordingly, in 1888, it purchased a lot adjoining the courthouse lot on the south, and erected thereon a two-story building, in the lower story of which was situated offices of the sheriff, chancery clerk and circuit clerk, the upper story being used as a jail.　The original courthouse lot was inclosed, and the courthouse was within one hundred feet of its southern boundary.　The sheriff's office had a door opening into the courthouse yard, but the door of the chancery clerk's office was outside of the yard, twenty feet from the gate leading to it.　There was no door between the sheriff's office and the clerks' offices.

Section 278, code 1892, provides that the boards of supervisors shall hold regular meetings at the courthouse of their respective counties, etc.　It is admitted that the petition for a local option election was considered, and the order therefor made, at a session of the board of supervisors held in said chancery clerk's office.　The circuit court held that the election was void, and .rendered judgment for the relator, whereupon the sheriff appeals.

*Rucks Yerger,* for appellant.

1. The meeting in the chancery clerk's .office was a compliance with § 278, code 1892.　The board is not required to

meet "in" or "within" the courthouse building. The two buildings were the property of the county, closely adjacent to each other, all in the same inclosure, and together constituted the seat of justice, embracing the courtroom and all the county offices. They are on one curtilage or lot, and, whether a strict or liberal interpretation be followed, the jail building is· at the courthouse.

The word "at," as defined by the lexicographers, is "near to," "close by," "adjacent to." The idea is nearness, close proximity to. For cases in which the word has been so construed, see 22 N. H., 63; 17 Wall., 624; 1 Scam. (Ill.), 329; 50 Ala., 172; 38 N. J. L., 299; 5 T. B. Monroe (Ky.), 374.

2. The decision of this question involves considerations of the gravest character affecting the public interests. All the meetings of the board for many years have been in the clerk's office. It will affect the validity of all the orders of the board, all the sales for taxes, as well as the power of the county to collect its revenue for the current year. To apply a liberal construction, and hold the order valid, will violate no right, public or private, and work no prejudice to the interests of the public.

*J. W. & W. D. Cutrer,* for appellee.

1. Meetings of the board, held at times and places other than those fixed by law, are void. *Stockett* v. *Nicholson,* Walker (Miss.), 75; *Jones* v. *Burford,* 26 Miss., 194; *Gamble* v. *Witty,* 55 *Ib.,* 26; *Johnson* v. *Futch,* 57 *Ib.,* 73; *Wolfe* v. *Murphy,* 60 *Ib.,* 1; *Bank* v. *Lewis,* 64 *Ib.,* 727; 4 Am. & Eng. Enc. L., 374, 376, 386, note 6. Courts have universally construed the word "courthouse," to be the building appropriated and occupied for holding courts, 4 Am. & Eng. Enc. L., 446.

2. The argument *ab inconvenienti* will not be allowed to override the positive requirement of the statute.

WHITFIELD, J., delivered the opinion of the court.

We have given this case that careful consideration which its importance demands. We have examined all the authorities cited by learned counsel for appellant, and others. The authorities relied on are inapplicable. The subject-matters under treatment in these cases furnish the key to the import of the word "at" in the various connections in which it occurs. The case of *State* v. *Camden*, 38 N. J. L., 299, is the case of an act providing that a railroad company should hold exempt from taxation a tract of land at the terminus of the road. It is to be noted that, in the various acts considered in the case, the words "at or near" are constantly used—"terminating at or near," etc. The West Jersey Railroad Company was, "through some agreement with the Camden & Amboy Company, to take its cars over the tracks of that company to a suitable landing within the limits covered by its charter," and, accordingly, the question in the case was whether "the terminus" of the West Jersey road was the point where it intersected the Camden & Amboy Railroad some "twenty-five hundred feet west of said intersection." The West Jersey Railroad had built its offices in the city of Camden, and not at the point of intersection, but ran, under the agreement, its cars into Camden over the track of the other road. The court held the terminus was where the buildings were erected at which freight was delivered, etc., under the agreement, a manifestly wholly dissimilar case. *Kibbe* v. *Benson*, 17 Wall., 624, was a case of service of process "at the dwelling house" (entirely different subject-matter), the court holding that, leaving the process "at a distance of one hundred and twenty-five feet" from the dwelling house, "and in a corner of the yard, is not a compliance with this requirement." *Bartlett* v. *Jenkins*, 2 Foster (N. H.), 53, is not only a case of utterly dissimilar subject-matter—a place where a casual military parade should take place—but the order expressly was to parade "at or near the house of Beresford;" and the court said, very properly, "these

words, ' at ' and ' near ' are, in this connection, synonymous."
*Hurley* v. *Marsh*, 1 Scam. (Ill.), 329, is a case of venue in a
criminal case—"at Montebello, in the county of Hancock,"
being held, of course, to be the usual form of laying venue,
and the words, " at Montebello," not to be descriptive of the
place " where the injury was committed." Place was not of
the essence of the offense. Counsel cites no Mississippi case
to support his contention. In *Bridge Co. v. Railroad Co.*, 6
Paige (N. Y.), 554, the court say: "The preposition ' at,'
when it precedes the name of a place and denotes situation, fre-
quently means the same as ' in ' or ' within.' "

The meaning of the words " at the courthouse " are best ar-
rived at, in this connection, by a comparison of our statutes on
this subject-matter, and a reference to our decisions thereon.
The context in which words stand, the subject-matter in the
discussion of which they are used, are the primary tests, when
their meaning is sought, and sections of the code (§§ 276, 277,
278, 279, 295, 297, 306, 3074, code 1892) place it beyond
doubt that the word " courthouse," in this legislation, means the
" building occupied and appropriated for the holding courts."
4 Am. & Eng. Enc. L., 446. Section 306 provides that,
"·when there shall not be a courthouse in any county, .or the
same may be undergoing repairs, or unfit for use, the board
of supervisors . . shall provide and designate some suitable
building in which the courts of the county and the meet-
ings of the board of supervisors may be held," etc., thus
conjoining the meetings of the " courts of the county and of
the board of supervisors." Section 3074 provides that the
" clerks of the circuit and chancery courts, etc., shall keep
their offices at the courthouse of their respective counties, if
offices shall be there provided for them, and if offices shall
not be there provided for them, they shall keep their offices
within one-fourth of a mile of the courthouses of their re-
spective counties." Here the distinction is clearly put between
two places—the " courthouse " and some other place within a

quarter of a mile of the courthouse, where the chancery clerk's office may be, in the case named. The boards of supervisors are to meet at "the courthouses" of their respective counties, not at the chancery clerk's offices, which may or may not be at the courthouses. In the case at bar, the chancery clerk's office was not at the courthouse. As said by the supreme court of Georgia, in *Longworthy* v. *Featherston*, 65 Ga., 165: "it ought not to have been at the clerk's office, for that was in no sense the courthouse, for it does not appear that any court was ever held there." A courthouse is a house where courts are held, . and "at the courthouse" has, in the legislation and decisions of this state, a crystallized and settled meaning in this connection, and means at the "building occupied and appropriated according to law for the holding of the courts."

This court has no legislative power. It is as much its solemn duty to enforce the law as written, when that law is clearly expressed, as that of the humblest citizen of this commonwealth. It would be a manifest perversion of its constitutional functions to read into a statute clearly written, a meaning at war with the plain and manifest significance of the terms used in their context, due regard being had to the subject-matter being treated. The law requiring boards of supervisors to meet at the courthouse is, for most obvious reasons, pre-eminently wise. That law this court must administer as written, and not bend to suit exigencies of varying cases, or to save from results, however hard, brought about by the inexcusable negligence which fails merely to open the code and read what, when read, is too clear to need any construction. Members of boards of supervisors should read at least so much of the code as relates to their duties.

*Affirmed.*