BENJAMIN E. SEXTON ET AL. *v.* COAHOMA COUNTY.

1. BOARD OF SUPERVISORS. *Place of meeting. Leases. Sixteenth sections.*

   A meeting of the board of supervisors, held in the chancery clerk's office in a separate building from the courthouse, although in the courthouse yard, was illegal, and a lease of a sixteenth section made by the board at such a meeting was void.

2. LEASES. *Sixteenth sections. Hutchinson's Code, p. 213, art. 12, sec. 2. Ib., p. 223, art. 26, sec. 5. Payment necessary to validity.*

   Under the provisions of Hutchinson's Code (p. 213, art. 12, sec. 2, and p. 223, art. 26, sec. 5), regulating the subject, an attempted lease of a sixteenth section, on which no money was paid, did not pass any title and was beyond the validating power of curative statutes.

3. SAME. *Subject to taxation. Code 1857, p. 76, sec. 5, art. 20.*

   Under Code 1857, p. 76, sec. 5, art. 20, so providing, sixteenth section land was subject to taxation only after it had been duly leased.

4. SAME. *Lease money all paid in cash.*

   A lease of a sixteenth section was not invalidated because the consideration was all paid in cash, and not in four annual installments.

5. SAME. *Ninety-four years, etc.*

   A written lease of a sixteenth section for ninety-four years and thirty-four days is valid, it appearing that the lease was made for ninety-nine years, but the execution of the writing was deferred until the consideration money was all paid, and was then made for the balance of the term.

6. SAME. *Curative statute. Laws 1870, p. 165, ch. 71.*

   Laws 1870, p. 165, ch. 71, was intended to validate all leases previously made of sixteenth section land, though in an informal and irregular manner; and the legislative intent was not simply to bind the lessees to make the stipulated payments, but to place the reciprocal obligation on the county to comply with its part of the contract.

Statement of the case.

FROM the chancery court of, first district, Coahoma county.

HON. CAREY C. MOODY, Chancellor.

Coahoma county, the appellee, was complainant, and Sexton and others, the appellants, were defendants in the court below. From a decree in complainant's favor the defendants appealed to the supreme court.

The proof showed that in July, 1855, the school commissioners or trustees of said county leased to J. W. Ledbetter all of said land, except lots 2 and 5, for a term of ninety-nine years, and in July, 1860, the school commissioners gave a written lease to Solomon McCloud to lots 2 and 5 for ninety-four years and thirty-four days in consideration of the payment in cash of the purchase money. In 1861 the tax collector of Coahoma county sold all of the lands to the levee board for the unpaid taxes of 1860, and it was again sold to the levee board in 1867 for the unpaid taxes of 1866. The land was assessed to the above lessees. In August, 1870, the treasurer of said county and *ex officio* treasurer of the school fund filed a sworn bill in the chancery court against the heirs at law and administrator of J. W. Ledbetter, then dead, alleging that all of said lands, except lots 2 and 5, were leased to J. W. Ledbetter for ninety-nine years by the school commissioners of said county, and that the purchase money had not been paid, and praying for a decree foreclosing the security given therefor. A decree was granted, ordering the sale of the land for the payment of the amount of the purchase money found due. The lands were sold, and purchased for the county, by the county treasurer, who had filed the bill. In March, 1883, all of said lands were sold to the state for the taxes of 1882, and from that time until 1889 the land was assessed as school land. On the 14th day of October, 1889, these lands were leased by the board of supervisors of Coahoma county to Wilson Ferguson and others for a period of ninety-nine years, and it is conceded that this lease was regular, and complied with the law in every respect, except that the meeting of the board of super-

visors was not held in the courthouse, but in the chancery clerk's office, which was in the courthouse yard, about one hundred feet from the courthouse.    In March, 1896, all of the land was sold to the state for the unpaid taxes of 1895.    Ferguson and his co-lessees remained in possession of the lands until 1895, and the lands were assessed to them when sold to the state in 1896.    During the years 1900 and 1901 the state, under Code 1892, § 2578, by patent, conveyed the lands to appellants.

*Maynard & Fitzgerald,* for appellants.

We have been unable to discover upon what ground the court held to be void the lease executed as aforesaid by the school commissioners to Solomon McCloud on July 18th, 1860, conveying to him a leasehold estate in said lots 2 and 5 for a term of ninety-four years and thirty-four days, in consideration of payment in cash of $448.26, the purchase money.    The curative act of 1870 cured any defect in said title.    Besides, ch. 144, Laws 1850, authorized and directed the board of school commissioners of Coahoma county to make and execute title on the application of the purchaser of any sixteenth section or portion thereof, in said county, so soon as such purchaser paid the purchase money with legal interest from the date of sale, and that said title, so made, shall be as good and valid as if all the requirements of the law had been complied with in making such sale.

It is true there is no proof of a former lease of these lots to Solomon McCloud, except the agreement of facts herein that he took possession as owner and under a claim of title in 1850.

The presumption is that the school commissioners did not do an unauthorized act, and that the lease they executed was simply the making of title to one who had previously leased the lots and who paid to the commissioners the purchase money.

The county received the money, and will not be estopped from pleading that the commissioners had no right to make the lease.

The admitted and proved facts in this case are that a lease was regularly made according to law conveying to Wilson Ferguson, George Clark, and Mattie Cole a term of ninety-nine years in said lots on October 14, 1889.

The only attack made by appellee as to the validity of this lease is that raised and decided in *Harris* v. *State,* 72 Miss., 960.

We differ with counsel for appellee as to the application of that case to the one at bar. That rule applies to acts of the board of supervisors done according to its constitutional organization, and not where, as in the leasing of school lands, it acts by special commission or appointment. The statute requiring the board of supervisors to meet at the courthouse means meetings held in its ordinary constitutional jurisdiction, and not where it acts as special commissioner. This same principle was applied in *Mark* v. *McElroy,* 67 Miss., 545.

*A. J. McCormick,* for appellee.

Meetings of the board of supervisors at a time or a place other than those fixed by law are void, and all proceedings had or done at such meetings are void. *Jones* v. *Buford,* 26 Miss., 194; *Gamble* v. *Witty,* 56 Miss., 26; *Johnson* v. *Futch,* 57 Miss., 73; *Wolfe* v. *Murphy,* 60 Miss., 1; *Bank* v. *Lewis,* 64 Miss., 727.

The McCloud lease complied with none of these requirements of the law. It was not made on a credit of four years; it was not made for a period of ninety-nine years, but for a shorter time; and, finally, it was not made by the township trustees, but by the school commissioners. In making leases of sixteenth sections all the requirements of the statute must be literally complied with. The authorities upon whom was cast the duty of making these leases exercised a limited and special authority, and necessarily were under the duty of exercising it exactly as

the law directed. The state holds the title to the sixteenth sections in trust for the benefit of the inhabitants of the township, and in exercising its authority to deal with these lands for the benefit of those inhabitants it must be conclusively presumed that every restriction imposed by the state must be met. When the legislature said it should be leased for ninety-nine years, it meant ninety-nine years, and not ninety-eight years. Had there been any intention of allowing a lease for a shorter period, the statute would have provided for a lease of years not to exceed ninety-nine years. If the legislature had intended for a lease to be made for cash, it would have said so; obviously the intention of the legislature was to provide an investment for the fund derived from the lease by requiring the lessor to buy on a credit of four years, with interest at ten per cent. While this period was passing, the authorities could arrange for other investments. The statute is express: The lease shall be for a period of ninety-nine years; it shall be on a credit of four years. The statute is mandatory, and not directory, and should be so interpreted.

TRULY, J., delivered the opinion of the court.

The chancellor correctly held that the lease of October 14, 1889, was absolutely void. To this conclusion we are bound by the decision of this court in *Harris* v. *State*, 72 Miss., 960 (18 South. Rep., 387; 33 L. R. A., 85), and the correctness of that opinion it is now useless to discuss. The differentiation attempted to be drawn by the appellants between that case and this must fail. There is no provision of law relating to the action of the board of supervisors in making leases of sixteenth sections which even intimates that they are acting in any other or different capacity than that in which they act in the discharge of their original routine duties. A meeting of a board of supervisors, if illegal from any cause, is necessarily, by operation of the same law, illegal for all purposes. The position could not be logically sustained that at a meeting, illegal because held at a place not authorized. by law, some

of the proceedings had at that meeting would be valid while others would be illegal.

The court correctly held that there was no competent proof of a valid lease to J. W. Ledbetter. Conceding all for which appellants contend as to the effect of the admissions in the suit filed by the county treasurer against the heirs and administrator of Ledbetter (as to which contention we intimate no opinion), it cannot avail, because the record of that proceeding, taken as a whole, shows affirmatively that no valid lease was ever made by any authority to Ledbetter. The provisions of law, as they then existed, regulating the lease of sixteenth sections were mandatory, and they were not complied with in the attempted lease to Ledbetter. The record shows that the purchase money was never paid on the lands claimed to have been leased to Ledbetter, and such payment was a condition precedent to the investiture in the lessee of any title to the land. The statute regulating the leasing of sixteenth section lands at that time expressly provided that it shall be the "duty of said trustees on the final payment of the money, and not before, to convey the right, title, use, interest, and occupation of said sections . . . for and during and until the full end and term of ninety-nine years." Sec. 2, art. 12, ch. 9, Hutch. Code, p. 213. This same idea is again expressed and emphasized in sec. 5, art. 26, ch. 9, Hutch. Code, p. 223, where it is said: "But in no case of sale or lease shall any title vest in the purchaser or lessee, until the whole of the purchase money, with interest, shall be paid." Therefore, no money being paid, no title passed. Hence the attempted lease to Ledbetter, granting its existence, was beyond the validating power of the curative statutes relied on by appellants. Such leasing was not merely irregular or informal; it was absolutely void. *Jones* v. *Madison Co.,* 72 Miss., 792 (2d par.) (18 South. Rep., 88). It also necessarily follows from this (aside from other considerations as to duration and extent of occupancy) that the lots denominated the "Ledbetter lands" were never subject to assess-

ment for purposes of taxation. It is true, art. 20, sec. 5, ch. 3, Code 1857, provides that all sixteenth section lands shall be liable to be taxed as other lands are taxed, but only "after the same shall have been leased;" and we have hereinbefore shown that a lease could lawfully be executed only "on the final payment of the money, and not before." Again, art. 20, sec. 5, *supra,* provides that in case of a sale of such sixteenth section lands for taxes "only the title of the lessee, or his assignee, shall pass by such sale;" but when this provision is considered in the light of the statute under which it is claimed the Ledbetter lease was made, that no title shall vest in the purchaser or lessee "until the whole of the purchase money, with interest, shall be paid," it becomes perfectly manifest that Ledbetter, having failed to pay the purchase money, acquired no title in the land which was susceptible of assessment or capable of being conveyed by sale upon nonpayment of taxes. Even had the leasing to Ledbetter been formally and regularly entered into and possessed every legal prerequisite to a valid lease save only the payment in full of the purchase money, this would avail the appellants naught, for the reason that until such payment was made no title to the land passed. *Jones* v. *Madison County, supra; Hoskins* v. *R. R.,* 78 Miss., 769 (29 South. Rep., 518; 84 Am. St. Rep., 644).

The court erroneously ruled as to lots 2 and 5 of the sixteenth section in controversy. The lease executed by the school commissioners to McCloud on July 18, 1860, conveying said lots to him, is valid. The objection of appellee that the lease was for only a term of ninety-four years and thirty-four days is without force, and shows by logical inference, at least, a strong probability that the lease was made with all due observance of formalities upon a term of four years' credit, as the law required at the time the other portion of the sixteenth section was attempted to be leased—namely, 22d July, 1855. A simple calculation of the time which elapsed between the two dates will show that there was at the date of the execution of the

lease only ninety-four years and thirty-four days still unexpired of the full term of ninety-nine years.

Nor is the objection urged by appellee that the lease should be held to be invalid because the consideration for the lease was paid in cash, and not in four annual installments, of any greater weight. The mandate of the law is that the letting shall, in the first instance, be made for a term of ninety-nine years and upon a four-years' credit; but, this having been done, the statute further expressly provides that no lease shall be executed and delivered so as to vest any "right, title, use, interest, or occupation" of the land in the lessee until the purchase or lease money has been paid in full. The lease to McCloud simply acknowledges receipt of the lease money in full; but this recital is no more than a statement that the money had been paid before the execution of the instrument, and does not negative the presumption that the money was paid in the four payments before the lease was in fact delivered. Assuming, however, that the money was paid in bulk at the delivery of the lease, this would not affect the validity of the lease. The purpose of the law in requiring sales to be made upon a term of four years' credit was presumably to secure the largest price possible; but, the lease having been made, the county would have no cause of complaint that the lessee prepaid the entire purchase price without taking advantage of the time which the law granted him.

But if both the objections urged by appellee were well taken, the curative act (ch. 71, p. 165, Laws 1870.) cured, and was intended to cure, just such defects. The purpose and effect of this act was to validate all leases previously made, though in an informal and irregular manner, so as to render the contracting parties, both lessor and lessee, liable to the obligations which they had respectively assumed or attempted to assume by the execution of such leases, whether or not done in the mode prescribed by the statute. The contention of appellee that the legislative intent was simply to bind the lessees to

make the payments as they had obligated themselves to do, and not to place the reciprocal obligation upon the county to comply with its part of the contract, is rejected as unsound.

It follows from what we have said that the board of super-visors was not entitled to recover possession of lots 2 and 5 of section 16, T. 28, R. 5, W., and that the decree of the chancellor cancelling the title and claim of the appellants to such land was erroneous.

*Reversed, and the cause remanded for decree to be entered in accordance with this opinion.*