## JONES *v.* STATE.*

(In Banc. Feb. 1, 1926.)

[107 So. 8.   No. 25077.]

1. COURTS. *Court must be held at courthouse or place designated by proper authorities.*

   There is no authority in law for holding court at any other place than the courthouse or the place designated as such by properly constituted authorities.

2. HOMICIDE. *Defendant's rights held prejudiced by moving of court to scene of homicide and inquiring into facts of killing not necessarily connected with scene being examined.*

   Where court, under Code 1906, section 2720 (Hemingway's Code, section 2213), removed itself away from courthouse for purpose of viewing scene of homicide, and testimony elicited at such place was in an effort to prove defendant's guilt rather than have witness point out scene of homicide and elicit information necessary to understand location being examined, *held* that, defendant's rights were prejudiced thereby.

3. HOMICIDE. *What examination away from courthouse must be devoted to, stated.*

   Examination away from courthouse, under Code 1906, section 2720 (Hemingway's Code, section 2213), must be devoted to the explanation of the scene of the homicide, location of distances, and such testimony as tends to make a complete map of the situation; and statute will not be extended to permit development of substantive facts other than to point out scene and such facts as are necessary to proper description of scene.

4. HOMICIDE. *Authorizing view of scene of homicide being in derogation of common law, rule strictissimi juris must be applied.*

   Code 1906, section 2720 (Hemingway's Code, section 2213), authorizing a view of scene of homicide, being in derogation of the common law, the rule *strictissimi juris* must be applied.

5. HOMICIDE. *Going beyond stipulations of statute authorizing view of scene of homicide must be presumed to be harmful to defendant.*

   Whenever the court goes beyond and not within the stipulations of Code 1906, section 2720 (Hemingway's Code, section 2213), permitting exceptions to the rule that the court shall not migrate

from place to place, then all that is done and said must be assumed to be harmful to defendant.

ANDERSON, J., and SMITH, C. J., dissenting.

*Corpus Juris-Cyc. References: Courts, 15 C. J., p. 896, n. 47. Criminal Law, 16 C. J., p. 827, n. 6, 9.

APPEAL from circuit court of second district, Coahoma county.

HON. W. A. ALCORN, JR., Judge.

Marshall Jones was convicted of murder, and he appeals. Reversed and remanded.

*Roberson, Yerger & Cook* and *Brewer, Brewer & McGehee,* for appellant.

Section 2213, Hemingway's Code, provides for the inspection or viewing of the property or the place at which the offense is charged to have been committed and declares that such place or object "shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by him and by the representative of each side at the time and place of such view or inspection." What may the witnesses be asked about? What is the limit of the authority prescribed by this statute? The statute says: *"In reference to any material fact brought out by such view or inspection."* This sentence is all the authority with which the court is clothed.

This is a statute enlarging the scope of testimony in a criminal case. It renders competent evidence which was not competent before its passage. It must be strictly construed and nothing shall be added to it by implication.

The testimony of the five witnesses was not pointing out any view or object. It was not in reference to any material fact brought out by such view or inspection. It was not such procedure as was even contemplated by the legislature and not authorized by the statute.

This court held in *Carter* v. *State,* 100 Miss. 342, that under the law, the trial must be had at the courthouse

at the county site of the county, and the court further said at page 345, "It was there, and there only, that the case must be heard and determined."

If the court could take the testimony of these five witnesses over in Blind alley away from the courthouse over the defendant's objection, they could proceed to empanel a jury at the courthouse and immediately move, taking the defendant over his protest to some inconvenient, uncomfortable place and there proceed to conduct the trial, and no court ought to sanction any such procedure and no law authorizes any such procedure.

It cannot be said that the testimony of these five witnesses was immaterial because it was almost the state's whole case. It cannot be said, as in the *McPherson case,* 124 Miss. 361, that the point is raised for the first time in the supreme court, for it was then and there raised. It cannot be said that no harm was done the defendant, because he admitted all the facts testified to, since here he denied and introduced witnesses to prove that the statements were not true and they were sharply at issue in the trial, and the affirmance of this case would open a wide field of bad practice that should not be tolerated in any court, that robs the defendant of his constitutional rights to a fair and impartial trial and we submit that the order of the court ordering the sheriff to take him away from the courthouse and carry him down into this alley was in violation of his constitutional rights. See *Hayes* v. *Territory,* 7 Okla. 15, 54 Pac. 300; *State* v. *Mortenson,* 26 Utah 312, 73 Pac. 562.

This court has held repeatedly that any order of the court made outside of the courthouse is void. *Sexton* v. *Coahoma County,* 86 Miss. 380; *Harris* v. *State,* 72 Miss. 960; secs. 3680 and 3695, Hemingway's Code. Boards of supervisors have the absolute power under the statute to provide the courthouse and jail and the statute requires that there the courts shall sit. *Carter* v. *State,* 100 Miss. 345. In *Hanley* v. *Medford,* 56 Ore. 171, the court says: "To constitute a lawful court, the persons who assume to hold the court and dispense justice must be offi-

cially assembled under authority of law, and the court must be held at the appropriate time and place appointed by law therefor.'' See, also, *Ex parte Branch,* 63 Ala. 383; *People* v. *Pisano,* 142 App. Div. 524.

*J. L. Byrd,* Assistant Attorney-General, for the state.

The district attorney filed a motion under section 2213, Hemingway's Code, asking that the court proceed to the scene of the homicide in order that the jury might view the place and in order that the physical situation there might be made known. To that the defendant objected, but the objection was overruled and the order thereon is in the exact language of the statute. By a reading of section 2213, Hemingway's Code, it will be seen that power is given to the circuit court to take the jury with the court and all of the parties connected to the scene of the matter in controversy and there question the witnesses in the case, or permit them to be questioned by the representative of each side in reference to any material fact brought out by such view or inspection.

Our contention is that in the examination of these witnesses who have just been referred to, all that was brought out was the physical situation there at the scene of the homicide or with reference to some material fact brought out by such view or inspection. The only possible thing that could be said not to have been such was the testimony as to the appellant's shooting the deceased and as to what was said after deceased fell and appellant approached him. The appellant admits the shooting and admits that he walked up to the deceased, and that the deceased asked him not to shoot him any more. These things, we submit, then could not have injured the appellant's cause in any way. Great stress is laid on the introduction of this testimony but counsel fails to point out anywhere how or by what means or in what manner the appellant's cause was hurt.

We find a long dissertation in the brief on the constitutional rights of the appellant to be tried in the court-

house and a long citation of authorities starting at the right of the board of supervisors to meet at a place other than the courthouse and coming on down the line, but we submit that the authorities thus cited are not in point, because in the instant case there was a statute directly authorizing the procedure taken by the court in viewing the scene. The only question in the whole proceeding was whether or not the appellant was injured or harmed in any way by taking the testimony of substantive matters there at the scene of the homicide. All of this testimony, we think, was in reference to material facts brought out by the view or inspection.

The case of *Carter* v. *State,* 100 Miss. 342, is no authority in this case, because in the Carter case the court went to the home of a witness who was unable to come to court and there took the witness's testimony.

Counsel say that the witnesses could not have been punished for perjury. We call the court's attention to the fact that the statute provides that the court shall remain in session and it is in session for all purposes when the view of the scene is had, as in this case, and we do not see how under any stretch of the imagination it could be said that a witness could not be held for perjury if in fact he was guilty of perjury. The statute expressly condemns false swearing in any procedure in any court without reference to where the court is held and under the statute we say that the court was as much in session there in Oil Mill alley where they went to view the scene as if they had been in the courthouse of Coahoma county.

We submit that the action of the court in receiving this testimony, under the circumstances of the case, was not error sufficient to reverse the cause, if error at all—which we do not concede.

*Roberson, Yerger & Cook,* and *Brewer, Brewer & McGehee,* in reply, for appellant.

Before you can deprive a man of his life in this state, he must be tried by a court and duly convicted, and in

court; and we submit that a courthouse is not the court; that an individual holding a commission as judge is not the court; that the clerk and sheriff are not the court; and that under all the definitions of what is the court both time and place are essential constituents of the organization of a court; that is to say, in order to constitute a court the officer must be present at the time and place appointed by law. See 15 C. J., page 718, and note 41, citing authorities from the United States court, from Alabama, Arkansas, Colorado, Iowa, Indiana, Kansas, Kentucky, Louisiana, Massachusetts, Pennsylvania, and West Virginia. There is no law authorizing any stage of the trial of a man for murder except in court and the statute would authorize the court and jury to visit the scene of the homicide provided that at the discretion of the court witnesses might be questioned by him and by the representative of each side in reference to any material fact *brought out by such view or inspection,* and that the testimony of a substantive nature was not in this case *brought out by any view or inspection,* and under the law the court is limited to those matters only.

This was an extraordinary and unusual power given the court and must be strictly construed so as not to enlarge those powers beyond the expressed language of the statute. *Cockey* v. *Cole,* 28 Md. 276.

It is our contention that the judge overlooked the limitations of his power as a court and when it went beyond the field prescribed by the law, *it was not a court.* Consequently, no person could be punished for perjury for anything said against the prisoner except in pointing out the object or view or explaining the matter made material by the object or view.

Argued by *Ed. Yerger* and *Earl Brewer,* for the appellant, and *J. L. Byrd,* Assistant Attorney-General, for the state.

McGOWEN, J., delivered the opinion of the court.

The appellant, Marshall Jones, appeals here from a jury verdict of guilty and the imposition of the death penalty by the court below on a charge of murder from the second district of Coahoma county.

On September 22, 1924, the appellant, Marshall Jones, shot and killed Sam Cox, the killing occurring in Oil Mill alley in the city of Clarksdale at or near the house occupied by Sadie Howard and her husband, Robert Howard, and also by Rebecca Mitchell, and her paramour, the deceased.

According to the state's witnesses, some months prior to the homicide Rebecca Mitchell and the defendant had lived together in another part of Clarksdale, but the defendant had abandoned the relation apparently, and for several months had worked in Helena, Ark. During the day and prior to the homicide the defendant visited the house and had a conversation with Rebecca Mitchell for a few moments and then left. Soon thereafter he returned, and on his return Sam Cox and the other state's witnesses were then in the house. According to the state's witnesses, no conversation occurred between the defendant and the deceased save the words, "Howdy, Sam" and "Howdy, Marshall." Thereupon the deceased, Sam Cox, proceeded to leave the room, and was followed by the defendant. The deceased having gone down from the porch to the ground, the defendant shot him in the back. Several eyewitnesses testified to about this state of facts. The parties were all negroes. The defendant and his witness, Mims, testified that he spoke in a conciliatory tone to the deceased, but that deceased was abusive and threatening, making the usual hip-pocket demonstration, when the defendant, as he claimed, fired in self-defense. We have not gone into details in the statement of facts, deeming it only necessary to show that there was an issue to be tried and submitted to the jury, and testimony sustaining the two theories.

After examination of one witness on behalf of the state, the state, by its district attorney, made a motion that the court remove itself to Oil Mill alley away from the court-house and view the scene of the homicide, which motion was sustained by the court over the objection of the defendant.  The motion set out with great particularity, embracing, in substance, all of section 2720, Code of 1906 (Hemingway's Code, section 2213), which reads as follows:

"When, in the opinion of the court, on the trial of any cause, civil or criminal, it is proper, in order to reach the ends of justice, for the court and jury to have a view or inspection of the property which is the subject of litigation, or the place at which  .  .  .  any material fact occurred, or of any material object or thing in any way connected with the evidence in the case, the court may, at its discretion, enter an order providing for such view or inspection as is herein below directed.  After such order is entered, the whole organized court, consisting of the judge, jury, clerk, sheriff, and the necessary number of deputy sheriffs, shall proceed, in a body, to such place or places, property, object or thing to be so viewed or inspected, which shall be pointed out and explained to the court and jury by the witnesses in the case, who may, at the discretion of the court, be questioned by him and by the representative of each side at the time and place of such view or inspection, in reference to any material fact brought out by such view or inspection.  The court on such occasion shall remain in session from the time it leaves the courtroom till it returns thereto, and while so in session outside the courtroom it shall have full power to compel the attendance of witnesses, to preserve order, to prevent disturbance and to punish for contempt such as it has when sitting in the courtroom.  In criminal trials all such views or inspections must be had before the whole court and in the presence of the accused, and the production of all evidence from all witnesses or objects, animate or inanimate, must be in his presence."

It appears that the court made the order before leaving the courthouse and then repaired with the officers, the jury, the defendant, the bailiffs, the sheriff, the clerk, and counsel engaged in the case, to Oil Mill alley and there five witnesses were examined, all the eyewitnesses, and one who was not. The following witnesses were examined: Anna Wallis, Cornelia Stepton, Vandella Johnson, Henry Harris, and Sadie Howard. We will quote some excerpts from the testimony to show the character of the examination held by the court in Oil Mill alley away from the courthouse of the county:

"Q. What did he do when he came down the steps? (Referring to the defendant.) A. He walked over there, and he stood and looked at him, still with the pistol in his hand.

"Q. Which hand is this, your right hand? A. My right hand.

"Q. What did you say he did with Marshall Jones at that time? A. Sam Cox throwed his head back and got his head around that way where he could see him; he asked him not to shoot him. He says, 'I ain't going to do nothing to you.' And when he said that I got up and begged Marshall not to shoot him any more. . . .

"Q. Well; after they went in there, how long was that before the shooting? A. It was not very long, because Sam put his coat on, and came to the door, with his back out of the door, and his face in the house, and what he was saying I don't know, but he had his back out of the door, fixing his coat up on his shoulder; that is what took me to look at him, and when he stepped out and got along here, he steps out and cracked down on him; 'Boom!' and he fell."

This excerpt is from the testimony of Anna Wallis.

Much of the testimony was devoted to the development of the facts of the homicide, rather than to pointing out the situation to the jury. Practically the same kind of

testimony was elicited from Cornelia Stepton, Vandella Johnson, and Sadie Howard.

Henry Harris was not present at the moment of the shooting, but met the defendant coming around the house, and was examined mainly with reference to what occurred after the shooting when he met the defendant. The following questions and answers from his testimony are illustrative:

"By MR. SMITH: Q. How long after the shot had been fired before you met Marshall Jones? A. Well, it hadn't been no time, because as soon as the shot was made I came on out; I was in the house there when the shot was made. I quit eating, and met him at the corner of the house.

"Q. You were in the house eating? A. My house right back there.

"Q. Then immediately afterwards you met Marshall Jones? A. Yes, sir.

"Q. All right; now, then, state what Marshall Jones, if anything, did, at that time? A. Well; when I met him he was—

"By Gov. BREWER: Defendant objects. (Objection overruled. Defendant excepts.)

"By MR. SMITH: Q. State what he did? A. It seemed to me like he was trying to put his gun down in his scabbard, and looked up to see me, and he pointed it on me. He didn't say nothing to me. I didn't say nothing to him. He went on and got over the fence, and I came on around here. (Defendant objects. Objection overruled. Defendant excepts.)

"Q. Have you known Marshall Jones long? A. No, sir; I don't know him personally. I just been seeing him, just like I did this other boy.

"Q. Are you any kin to Marshall Jones, Sam Cox, or Rebecca Mitchell? A. No, sir. (Defendant objects to the testimony as not being proof about the premises at all, but substantive proof in the case has no connection with the location of the premises, or pointing out scenes,

and not contemplated by the law and not in the court-
house of Coahoma county. Motion overruled. Defend-
ant excepts.)

"By Mr. Smith: Q. State whether or not you were
friendly with all of these parties? A. So far as I know,
I haven't had no words with none of them. None of
them have had no words with me.

"Q. What kind of a fence was this around there that
Marshall Jones got over that you just testified about?
A. Built like that around there, wire on top of it,
pickets.

"Q. How many wires across the top of the pickets?
A. I don't know, sir, but I know—

"Q. Take the witness.

"By Gov. Brewer: Defendant moves the court to ex-
clude the testimony of this witness, because he was not
present at the homicide, and because his testimony sub-
stantive in the case, not pointing out any of the objects
or scenes, location of the homicide, and things that oc-
curred afterwards, in different places, statements, ac-
tion, and talk not connected with the pointing out of the
scene of the homicide at all. (Objection overruled. De-
fendant excepts.)"

Defendant by his counsel objected to the taking of this
testimony strenuously at every stage of the proceeding,
so that the point is here sharply presented as to whether
or not this statute authorizes the development of the main
facts of the case in a trial for murder at the scene of the
killing, and away from the courthouse, the place desig-
nated by law for holding courts. An examination of all
of this testimony discloses the fact that the district at-
torney developed all of the essential facts leading up to,
at the time of, and immediately after the homicide there
in the negro quarters in Oil Mill alley.

There is no authority in law for holding court at any
other place than the courthouse or the place designated
as such by the properly constituted authorities, which it
is unnecessary to repeat here. The examination of Henry

Harris especially illustrates to what extent trial courts may go if this section means that the trial may be had at the scene of the homicide. The obvious purpose of this statute was that the court might go and with the jury see the objects and surroundings and have a view of the situation and have pointed out and explained to the court the objects there, and bring out the material facts relative to the scene. Henry Harris was permitted to describe a demonstration of a pistol made toward him and to describe the climbing of the fence by the defendant. In our opinion the judge may as well have taken his organized court over the trail followed by the defendant in making his escape to Helena, Ark., so long as he kept the organized court in the state of Mississippi, if the testimony of Henry Harris was proper in this case.

We think the action of the court in this case in developing the facts of the killing and the incidents preceding and immediately succeeding the homicide was in fact holding the trial of this defendant in Oil Mill alley, and most of the testimony elicited was in an effort to prove the defendant's guilt rather than have witnesses point out the scene of the homicide and elicit information necessary to understand the location being examined; and there being timely objection to the proceeding, we are of opinion that the defendant's rights were prejudiced, and especially as the trial changed from an examination of the scene to an inquiry into the facts of the killing not necessarily connected with the scene being examined.

True it is that all the competent facts elicited in the trial of any case such as this may be said in a sense to be material facts connected with the view or inspection, but in our opinion the examination away from the courthouse under this statute must be devoted to the explanation of the scene, location of distances, and such testimony as tends to make a complete map of the situation.

We cannot lend our assent to the idea that this statute permits the trial of a cause at a place other than that designated by law, and this case is an illustration of the

danger of holding that the entire trial may be had at some point not authorized by law under the guise of inspection of the scene. The very warp and woof of our law cluster about the fact that there shall be orderly procedure, at a specified time, at a fixed place, where the presiding judge, assisted by his officers, may be in entire and complete control of the entire situation, where the public may hear and see everything that goes on in connection with the trial of a cause. This beneficient provision of the law grew out of the abhorrence engendered by private inquisitions and star chamber proceedings, and a departure from the rule tends towards disorganization of the court, and tends to dissipate the respect for the administration of justice wherever there is a letting down of the bars such as here took place.

If we hold that permitting a major portion of the trial so far as eliciting the main facts of the homicide was concerned, in Oil Mill alley is proper, then there would be no limit on the power of the court, once he had gone to the scene, to examine the witnesses indefinitely and prolong the trial at the scene of the murder to its conclusion. We cannot subscribe to this view. As a matter of fact, it is the experience of any trial judge that a record secured by viewing the scene is very imperfect. The opportunities for unfairness on either side are broadened, and we cannot say that it would not hurt a defendant to have the trial occur at some place other than the place designated by law. We prefer to say that only a view of the scene may be had and witnesses examined for the purpose of a description of such scene and the material facts there seen by all, both court and jury, and we limit this statute, section 2720, Code of 1906 (Hemingway's Code, section 2213), here under review to the plain object which it sought to attain, and we shall not extend it to the point of permitting the development of substantive facts other than to point out the scene and such facts as are necessary to a proper description of the scene.

All of the material facts of the homicide were contradicted sharply by the defendant and his witness, and especially the testimony of Henry Harris was contradicted.

In the case of *Sexton* v. *Coahoma County,* 86 Miss. 380, 38 So. 636, this court held that a meeting of the board of supervisors, held in the chancery clerk's office in a separate building from the courthouse, although in the courthouse yard, was illegal and void.

In the case of *Harris* v. *State,* 72 Miss. 960, at page 965, 18 So. 387, 388 (33 L. R. A. 85), it is held:

"A courthouse is a house where courts are held, and 'at the courthouse' has, in the legislation and decisions of this state, a crystallized and settled meaning in this connection, and means at the 'building occupied and appropriated according to law for the holding of the courts.'

"This court has no legislative power. It is as much its solemn duty to enforce the law as written, when that law is clearly expressed, as that of the humblest citizen of this commonwealth. It would be a manifest perversion of its constitutional functions to read into a statute clearly written, a meaning at war with the plain and manifest significance of the terms used in their context, due regard being had to the subject-matter being treated. The law requiring boards of supervisors to meet at the courthouse is, for most obvious reasons, pre-eminently wise. That law this court must administer as written, and not bend to suit exigencies of varying cases, or to save from results, however hard, brought about by the inexcusable negligence which fails merely to open the code and read what, when read, is too clear to need any construction."

Section 307, Code of 1906 (Hemingway's Code, section 3580), provides that the boards of supervisors shall provide for and cause to be erected in their respective counties in each judicial district thereof a good and convenient courthouse. Section 322, Code of 1906 (Hemingway's Code, section 3695), among other things pro-

vides for the acquisition of land on which to erect a courthouse and to designate the courthouse.

In the case of *Carter* v. *State,* 100 Miss. 342, 56 So. 454, Ann. Cas. 1914A, 369, the organized court heard the testimony of Jim Strickland over the objection of defendant and it was urged there, as it is urged here, that this departure did not harm the defendant. Whitfield, C., speaking for the court, said:

"Bishop, in his new Criminal Procedure (volume 1, section 1195) announces that this cannot be done, citing *Adams* v. *State,* 19 Tex. App. 1. That case we have carefully examined. It is identical in its facts with the case at bar, and on the point involved the court said: 'We know of no authority which would compel the defendant to go with the court and jury from the courthouse to where the absent witness was at the time, that her testimony might be taken. Under the law the trial must be had at the courthouse at the county site of the county. It was there, and there only, that the case must be heard and determined. If the defendant could be required to go one-half a mile with the court and jury in order to have the benefit of the testimony of an absent witness, he could be required to go one, two, or five miles. We cannot sanction such a practice. All the proceedings in the trial should be conducted at the courthouse, the place designated by law for the trial of causes. If the defendant had consented to the proposition to go with the court and jury to the place where the witness was, and there take her testimony, and if her testimony had in this manner been taken, we do not think the defendant could have objected to the irregularity. But that is not the question before us. In this case the defendant's application for a continuance was refused; one of the grounds of the refusal being that he declined to accept the proposition of the court to go with the jury to the place where the witness was confined by sickness, and there take her testimony. Such a proposition was, we think, no answer to

his application for a continuance,. and should not be considered in determining his right to a continuance.' "

We are absolutely certain that much of the testimony taken in Oil Mill alley in this case was such as is not permitted by section 2720, Code of 1906 (Hemingway's Code, section 2213), under which a view of the place where the homicide occurred was had and that all of the testimony was taken over the strenuous protest and objection of the defendant, so that, whenever the court permitted the testimony to go beyond the plain stipulation of the statute, that part of the trial was as harmful to the defendant in the instant case as was the evidence complained of in the *Carter case, supra,* because not authorized by the statute nor by the common law, and this statute, authorizing the view of the scene, is in derogation of the common law, and the rule *strictissimi juris* must be applied.

In *Hanley* v. *Medford,* 56 Or. 171, 108 P. 188, the court said: "To constitute a lawful court, therefore, the persons who assume to hold such court and dispense justice must be officially assembled under authority of law, and the court must be held at the appropriate time and place appointed by law therefor. If the person assuming to act as judge was not then invested with judicial authority (that is, with the power of the law to declare and record its mandates), then his acts in attempting so to do are of no consequence whatever, and are void. And if he were fully invested with judicial authority, so as to make his pronouncement of the law effective, still the time and place of holding the court are equally essential; for, when the law prescribes the time and place for the holding of court, then time and place are as essential limitations of jurisdiction, as are subject-matter and parties"—citing *Ex parte Branch & Co.,.* 63 Ala. 383.

It is not within the spirit and genius of our law that the court should migrate from place to place, and whenever the court goes beyond and not within the stipulations

of this statute permitting exceptions to the rule, then all that was done and said must be presumed to be harmful to the defendant, and for this error we think this case should be reversed.

The defendant requested the following instruction, which was refused by the court:

"The court instructs the jury that if there is a probability of the innocence of the defendant, then there is a reasonable doubt as to his guilt, and the jury must return a verdict of not guilty."

It is true that there are many instructions in this record in which the reasonable doubt theory was submitted to the jury. However, we call attention to the fact that Chief Justice George reversed the case of *Nelms* v. *State,* 58 Miss. 362, for the refusal of this instruction, and, while we do not say that this is reversible error in the light of the many instructions secured by the defendant, yet, upon another trial, we think this instruction should be given by the court.

Many other assignments of error are in this record, but, believing it improbable that they will occur again in another trial, we shall not undertake here to review each of them in detail.

For the error in permitting the state to introduce the material substantive testimony of the facts of the killing not absolutely necessary to point out the scene, and while away from the courthouse, over the objection and protest of the defendant, this case must be reversed.

*Reversed and remanded.*

Anderson, J. (dissenting).

I am unable to agree with the majority of the court. The majority opinion limits the purpose of the statute to such an extent that it strikes down and makes meaningless an important part of its language. When it comes to the decision part the opinion uses this language: "But in our opinion the examination away from the courthouse under this statute must be devoted to the explanation of

the scene, location of distances, and such testimony as
tends to make a complete map of the situation.   .  .  .
We limit this statute, section 2720, Code 1906 (section
2213, Hemingway's Code), here under review, to the plain
object which it sought to attain, and we shall not extend
it to the point of permitting the development of any sub-
stantive facts other than to point out the scene *and such
facts as are necessary to a proper description of the
scene.*" (Italics mine.) Therefore the rule laid down is
that no substantive facts can be developed other than
to point out the scene and such facts as are necessary
for a proper description thereof, while the pertinent
language of the statute is "which shall be pointed out
and explained to the court and jury by the witnesses in
the case, who may *at the discretion of the court* be ques-
tioned by him and by the representatives of each side at
the time and place of such view or inspection *in reference
to any material fact brought out by such view or inspec-
tion.*" (Italics mine.) It will be observed that the stat-
ute provides that not only the scene may be pointed out
and explained to the court and jury by the witnesses in
the case but the court in its discretion may question the
witnesses himself and permit the attorneys of each side
to do the same *in reference to material facts brought out
by such view or inspection.* That language is rather
broad. A case can easily be conceived where the view of
the scene by the court and jury and the pointing out of
the same by the witnesses would bring out many material
facts. As appears to me, the legislature made this stat-
ute say one thing, and the majority opinion makes it say
another and a materially different thing.

Furthermore, in my judgment, the majority opinion
is harmful and mischievous in its effects, in that it holds
that a violation of the statute by the court vitiates the
whole trial regardless of whether any harm is shown to
have been done the complaining party or not. Our Con-
stitution contains no provision that the courts of the state

shall be held in any particular place. The matter is regulated exclusively by statute. Generally the circuit and chancery courts are required to be held in the courthouses at the county seats of the different counties of the state. The statute involved authorizes a departure in that respect under the conditions named therein. When the statute is invoked and the court makes the order therein provided for, the trial of the cause takes place in part elsewhere than in the courthouse; part of it goes on in the courthouse and part of it at the scene designated in the order. The trial at one of the places has no more authority or sanctity behind it than the trial at the other. One is just as legal as the other so far as affected by the place. But according to the hard and fast rule laid down by the majority opinion, if the trial at the scene extends beyond its proper scope under the statute, if evidence is given or other things are done and said there which should have taken place in the courthouse, then the whole trial is vitiated and amounts to nothing, and that result follows regardless of whether any harm is done the complaining party or not.

What is to become of the language of the statute which is "that the witnesses in the case in the discretion of the court may be questioned in reference to any material fact brought out by the view or inspection?" Especially what does the phrase, "in the discretion of the court," mean? It may be conceded that the court went too far in this case; that the statute was violated. But it was done by the court in the exercise of its discretion given by the statute. Will this court reverse on that account regardless of whether there was an abuse of discretion by the trial court? In other words, whether appellant was hurt or not by the unauthorized action of the court? It seems to me that the effect of the majority opinion destroys whatever usefulness was intended by the statute, and especially is this true as applied to criminal cases. Under the rule laid down, I can hardly conceive

of a trial judge in a criminal case being willing to take the chances of repairing to the scene when he knows that the least step beyond the dead line will avoid the trial. Under the law and the action taken by the trial court, this case was triable in two places, namely, in the court-house and at the scene of the homicide designated in the record as Oil Mill alley. Because one trial overlapped the other, although the result of mere error on the part of the court, and without harm to appellant, the court says the whole trial is void. It seems to me that the doctrine of harmless error is peculiarly applicable to this state of case.

I am requested by Judge SMITH to say that he concurs in this dissent.