Brown *v.* State.

Feb. 1, 1954

No. 38974 51 Adv. S. 1. 70 So. 2d 23

*John Horan,* Water Valley; *Hugh N. Clayton,* New Albany, for appellant.

750

*Joe T. Patterson,* Asst. Atty. Gen., Jackson, for appellee.

McGEHEE, C. J.

The appellant, Lessie B. Brown, was found guilty of robbery and sentenced to five years in the penitentiary. She was accused of robbing Adrian Taylor of the sum of $3.50. She appeals from the conviction.

On September 3, 1952, appellant, a Negro woman, approached the taxicab of Adrian Taylor, a white man, in the City of Oxford about 10 o'clock in the morning. She entered the cab and Taylor transported her west of Oxford to College Hill, where he stopped at the grocery store of Mrs. Lucille Shaw. Appellant entered the grocery store and purchased a package of cigarettes. She then returned to the taxi and Taylor drove the taxi about two miles beyond College Hill and turned off to the right and traveled about a half mile to a "big wooden gap" and stopped. Later he drove back to the main highway with the appellant in the taxicab and took her to or near Tidwell's Store, which was somewhere beyond College Hill. The above stated facts are in accordance with the testimony of Taylor, the prosecuting witness, and also the testimony of the appellant. As to what happened during the course of this journey, the testimony is in direct conflict.

Taylor testified that when appellant hired the cab, she directed him to go to College Hill; that on the way she asked him if he had change for a "ten or twenty"; that she had him stop at Mrs. Shaw's store so that she could buy some cigarettes; that he went to the right off the highway to the wooden gap at appellant's direction, as

she stated she was looking for a red-top house; that he stopped at the wooden gap and told her to get out; that she told him not to move, that she told him not to turn around, that she cursed him and threatened to kill him, that she demanded his pocketbook, which he handed to her over his left shoulder; that he saw a gun in her hand but could not determine whether it was a toy pistol or a real one; that she handed the pocketbook back when she found there was no money in it; that she took his "money-changer" and removed or had him remove $3.50 in change therefrom, and took this money; that she tried to make him take her to Clarksdale; that she threatened him and his family if he should report the incident; and that when they got near Tidwell's store, he told her that he was going no farther and she could do what she wanted to, and that she thereupon got out of the car. In his testimony, Taylor denied the version of occurrences as given by appellant, which will be hereafter summarized.

Appellant testified that the story given by Taylor was not true and that what occurred was as follows: That when she hired the taxi she instructed Taylor to take her to Tidwell's store; that instead he went to College Hill; that on the way there she told Taylor that she did not want to go to College Hill and he told her to "hush and be quiet"; that when they arrived at Mrs. Shaw's store, Taylor gave her 25 cents and told her to go in and get him a package of cigarettes and that if she tried any tricks he would kill her; that she had been crying, because she was scared; that when she returned to the taxi from the store, Taylor "went on down this other road" and "he went on out in there and he come to an old wooden gate"; that he then made improper advances to her but she refused his proposals; that he got in the back seat with her but she jumped out; that he talked a while and said he was going to leave her out there; that when he got back in the car, she got back too because she didn't

know where she was and that Taylor then took her to Tidwell's store and let her out between that store and the Ole Miss driveway and told her that if she said anything about it he would kill her. It was shown by appellant's testimony that she then ate her lunch; went to the place of a Mr. Anderson and started picking cotton, and that a short time later the sheriff came and arrested her.

It will be noted that according to the testimony of the prosecuting witness, the appellant was guilty of robbery but that according to the testimony of the appellant, she committed no offense but to the contrary that she was mistreated by Taylor.

The only other witnesses were Mrs. Shaw, the owner of the store at which the cigarettes were purchased, and a Mr. R. L. Young, who was present in the store when that purchase was made. Their testimony is of little value because it amounts in substance to the fact that the appellant did enter the store while a taxi was waiting outside and purchased a package of cigarettes. However, it is to be noted that Mrs. Shaw, testifying for the State, said that "there was something the matter with her eyes, she was a stranger and did not look right" and that Mr. Young stated "her eyes were right watery. I had never seen that before and her eyes looked like they were running water." Both said that the taxi was waiting outside. This testimony tends to corroborate the statement of the appellant that she had been crying because Taylor did not take her where she wanted to go.

 We think that there was a question for the jury in this case on directly conflicting testimony as to the guilt or innocence of the appellant, and, therefore, that the court below correctly refused a request for a peremptory instruction.

 It is urged upon us that the testimony for the State is so unsatisfactory and the verdict is so obviously against the weight of the evidence that the motion for a new trial should have been sustained and that we should

reverse the case upon this point and permit another jury to consider the issue of guilt or innocence. Several factors are brought to our attention in this connection, including that of certain improper cross-examination of the appellant, to which, however, no objection was made at the time. The argument is persuasive and in fact quite compelling, and we find it necessary to reverse this case on that ground instead of on the ground hereinafter discussed, which will not in itself justify a new trial.

The appellant requested an instruction in this language: "The court instructs the jury for the defendant that if there is a probability of the innocence of the defendant, then a reasonable doubt exists as to her guilt; and the jury should find her not guilty." This form of instruction has been approved by the court a number of times. In Nelms v. State, 58 Miss. 362, the Court quoted an instruction in almost identical language which had been refused the defendant in that case and said: "This charge ought to have been given * * *. There is nothing in the other charges which were given, to remove this error." The Court thereupon reversed the case. It is true that the Court also based its reversal upon the giving of an objectionable instruction to the State, but the instruction under consideration was directly before the Court and was in part the basis for the reversal.

In Jones v. State, 141 Miss. 894, 107 So. 8, the case was reversed because of a certain matter entirely disconnected from the instructions in the case, but the Court added at the end of the opinion a quotation of a refused instruction in the same language as that under consideration and after stating that there were many instructions in the record by which the reasonable doubt theory was submitted to the jury, called attention to the Nelms case and said: "While we do not say that this is reversible error in the light of the many instructions secured by the defendant, yet, upon another trial, we think this instruction should be given by the Court."

This same instruction was again approved by the Court in the recent case of McNair v. State, 215 Miss. 510, 61 So. 2d 338. The Court affirmed the conviction in this case. However, after quoting the instruction, the Court said: "This instruction should have been given * * *. In the case at bar the court granted appellant an instruction which told the jury that if Smith was cut by some other person then it is the sworn duty of the jury to find him not guilty and that 'it is not necessary that you believe this beyond a reasonable doubt but that if you believe it to be reasonably probable, then it is your sworn duty to find the defendant not guilty.' We are of the opinion that by this instruction the jury was sufficiently charged that if there was a reasonable probability that appellant did not cut Smith, then the jury should find him not guilty, and that for this reason the refusal of the instruction first quoted, while error, was not such prejudicial error as to require a reversal."

In the case of Milner et al. v. State, Cause No. 38810, decided January 4, 1954, and not yet reported in the advance sheets or otherwise, the Court in discussing the refusal of the instruction now in question, said:

"In contending that it was error to refuse this instruction, the appellants rely upon the case of Nelms v. State, 58 Miss. 362. It is true that in the Nelms case the Court held that the refusal of such an instruction was error. The Court, however, based its ruling upon the fact that there was nothing in the other instructions for the defendant to cure the error. In the case of McNair v. State, 215 Miss. 510, 61 So. 2d 338, the Court held that such an instruction was proper and should have been given, and called attention to the fact that the action of the court in refusing such an instruction was criticized in Jones v. State, 141 Miss. 894, 107 So. 8, and Nelms v. State, 58 Miss. 362. In the McNair case, however, the Court held that the refusal of the instruction in that case was not reversible error in view of the fact that another instruc-

tion which was granted to the defendant sufficiently charged the jury as to the defendant's right to an acquittal if the jury believed from the evidence there was a reasonable probability of the defendant's innocence.''

 We have concluded since this particular instruction has repeatedly been approved by the Court, the same should have been given, but in view of the other instructions on the question of reasonable doubt that were given in favor of the appellant, the refusal to give the instruction here in question would not justify a reversal of the case on that ground alone. We base our reversal and remand of the case primarily upon the fact that the verdict is against the great weight of the testimony.

 We comment as follows on one other assignment of error. It is said that the court erred in refusing the appellant the so-called ''two-theory'' instruction. The requested instruction was in the following words: ''The court instructs the jury for the defendant that where there are two theories of the case presented by the evidence, one favorable to the State, and the other favorable to the defendant, it is the duty of the jury to adopt the theory most favorable to the defendant, and find the defendant not guilty.'' We feel that the appellant is mistaken in the contention that this instruction should have been given. As pointed out in 1 Alexander, Miss. Jury Instructions, Sec. 172, page 82, ''The instruction, herein defined, is never proper except where a case rests entirely upon circumstantial evidence. Theories should be restricted to cases based upon circumstantial evidence, since a mere conflict in direct testimony creates no hypothesis.'' See in support of this statement in the text, the case of Yarbrough v. State, 202 Miss. 820, 32 So. 2d 436, wherein the Court in discussing this matter said: ''Defendant requested and was refused what is generally known as the two-theory instruction. He urges, with force, that this was error. The uniform holding of this

Court is that this instruction should not be given where the guilt does not rest entirely on circumstantial evidence.''

Reversed and remanded.

All of the eight Justices participating herein concur in this opinion, *Justice Gillespie* having no part.